**NOLAN, Plaintiffs-Appellants v. BENDER, et., Defendants-Appellees.**

Ohio Appeals, Ninth District, Summit County.

No. 3652.  Decided June 26, 1944.

Messrs. Buckingham, Doolittle & Burroughs, Akron, for Appellants.

Messrs. Wise, Roetzel & Maxon, Akron, for Appellees.

442

(Ross, P. J., Hildebrant and Matthews, J. J., of the First Appellate District, sitting in the Ninth Appellate District, by designation.)

## OPINION

By ROSS, P. J.

This is an appeal on questions of law from a declaratory judgment entered by the Court of Common Pleas of Summit County, Ohio.

By the institution of the action the plaintiffs sought to obtain a declaration that real estate owned by them was not charged with an easement or right of way over their property in favor of the defendants.

It appears from the admitted allegations in the pleadings, stipulations, and evidence that in the year 1917, William T. Sawyer, William B. Haynes, and Judson Bender were the owners of a tract of land which had a northeastern frontage on a body of water known as West Reservoir. This tract was later subdivided into three allotments, number 1 and 2 having a frontage on the Reservoir. Number 3 is southwest of allotments 1 and 2 and is separated from them by a dedicated street, known as Melton Avenue. All of the lots in Number 3 allotment have access to and front upon Melton Avenue or on Melcher Avenue, lying to the south of Allotment No. 3.

In 1919, the owners of the allotments conveyed Lots 1 and 24 in Allotment No. 1 to James Y. Black, who conveyed to Knapp, who conveyed to plaintiffs in 1940.

Lot No. 1 has more than a seventy foot frontage on the Reservoir. Lot 24 adjoins Lot No. 1 on the southwest. The two lots have been occupied by the several owners as one parcel, thus constituting a tract of ground facing on the southwest upon Melton Avenue, and fronting on the northeast upon the Reservoir.

All other lots in Allotment No. 1, fronting upon the Reservoir, have a width of fifty feet.

The deed from Sawyer, Haynes and Bender to Black in 1919, contained the following reservation:

"No building is to be constructed on the southeast twenty feet over which persons designated by grantors are to have right of access to and from the lake."

The succeeding deeds, ultimately placing title to Lots 1 and 24 in plaintiffs, contained either the same restriction or a reference thereto.

In 1924, Sawyer and Haynes conveyed to Bender title to all lots unsold in all the allotments.

In the deeds from Sawyer, Haynes and Bender, and later from Bender alone, to purchasers of lots in Allotment No. 3, a reference to such easement over lots 1 and 24 in Allotment No. 1 was made. The language used varied in the several deeds and in some cases referred to an easement over Lots 1 and 24 of Allotment No. 1, and in other cases to an easement over either lot 1 or Lot 24 of Allotment No. 1. The same privilege was also carried by the grantors into land contracts of sale for the lots in Allotment No. 3.

The owners of lots, possessing deeds or convenants containing such privilege of way over Lots 1 and 24 of Allotment No. 1, are specifically set out in the evidence and stipulations.

The following excerpt from a deed from Judson Bender to Fremont Eichelberger is typical of the language used in the several deeds of lots in Allotment No. 3:

"Grantors hereby grant to the grantees, their heirs, successors and assigns the right to use the Southeast twenty feet of Lot No. 1 in the Catalpa Grove Allotment No. 1 as recorded in Plat Book 21, Page 19, Summit County Records and also all of lots Nos. Thirty-five and fifty-seven in the Catalpa Grove Allotment No. 2 as recorded in Plat Book 21, Page 79, Summit County Records for access, ingress and egress to and from the lake, to be used in common with other persons designated by the Grantors for this and no other purpose. The rights and privileges aforesaid are also granted to the grantees, their heirs and assigns as and only an appurtenance to the land herein described and are inseparable therefrom and cannot be exercised or enjoyed except in connection with and as an appurtenance of said land."

Another instance is found in a deed from Bender to George E. Bergdorf:

"Also granting the right to use the southeast twenty (20) feet of lots Nos. 1 and 24 in the Catalpa Grove Allotment No. 1 and recorded in Plat Book 21, Page 19, Summit County Records as well as the right to use lots 35 and 57 Catalpa Grove Allotment No. 2 as recorded in Plat Book 21, Page 79, Summit County Records for access, ingress and egress to and from the lake, to be used in common with other persons designated by the grantors for this and no other purpose. The rights and privileges aforesaid are hereby granted to the grantees, their heirs and assigns as and only as an appurtenance to the land conveyed in this deed and are inseparable therefrom and cannot be exercised or enjoyed except in connection with and as an appurtenance of said land.

"Grantors reserve the right to deed lots Nos. 35 and 57 as aforesaid as a public thoroughfare in lieu of the right above granted with reference to said lots."

It appears that the owners of the subdivision failed to convey lots 35 and 57 in Allotment No. 2 to anyone, the title to such lots at this time being in Bender.

A right of way in many cases is given the owners of lots in Allotment No. 3 across these two lots from Melton Avenue to the Reservoir. Lots 35 and 57 in Allotment No. 2 adjoin each other in the same manner as Lots 1 and 24 in Allotment No. 1, Lot 35 having a frontage on the Reservoir, Lot 57 a frontage on Melton Avenue.

No motion for a new trial having been filed after the filing for journalization of any finding or decree of the court, the weight of the evidence is not involved. **Krasny v Metropolitan Life Ins. Co., 143 Oh St, 284, Steinle v City of Cincinnati, 142 Oh St, 550.**

The findings of the court in the instant case, in the shape of an opinion, seem to have been filed. but not "filed for journalization," or journalized. The Court speaks only through its journal. However, there is no serious dispute as to the facts.

While the Court did exclude certain conversations had between the original grantors and the original grantees of plaintiff's property, there was enough admitted in the record to clearly disclose that for almost twenty-one years prior to the acquisition of title by plaintiffs in 1940, and commencing at the time of the purchase by Black in 1919, it was universally understood that the owners of lots in Allotment No. 3 had a right of way across Lots 1 and 24 in Allotment No. 1, from Melton Avenue to the Reservoir. Not only was this understood, but the owners of Lots 1 and 24, previous to purchase by plaintiffs, expedited travel across these lots by aiding in the

placing of a definite roadway, placing cinders thereon, and keeping it open. The plaintiffs, more than 20 years after such original grant, are the first to question this universally admitted right. If there is any doubt as to the legal existence of such right of way in favor of the owners of lots in Allotment No. 3, properly designated by the grantors thereof, certainly there is enough evidence in the record to justify the intervention of equity in reforming the deeds in question to carry out the mutual intention of the original grantors and grantees of plaintiffs' property.

Considering, however, the situation from a purely legal standpoint, it is the contention of the plaintiffs that the easement in question must be either one appurtenant or in gross. That it cannot be the latter except possibly as to Bender himself, since an easement may not be assigned. That it can not be an appurtenant easement, since the right of way has no terminus in any dominant tenancy.

There is no ground for considering the easement one in gross, except as to Bender.

As to the contention that the easement is not appurtenant to the dominant tenancy, all the lots in Allotment No. 3, it is to be noted, have a frontage on a dedicated street, either Melton Avenue or Melcher Avenue, and that the servient lot No. 24 terminates in Melton Avenue, and Lot No. 1 is adjacent to Lot No. 24. There is, therefore, no privately owned property **between** the servient lots and any of the dominant lots. In other words, any lot owner in Allotment No. 3 may leave his property, travel over a public street and thence immediately pass upon and over the lots upon which the easement is reserved. The question of the effect of intervening privately owned property between the dominant and servient tenancies is not involved, nor here passed upon. It is perfectly apparent that by the use of the words "persons designated by the grantors" in the deed to Black, that it was mutually understood that such words referred to lot owners in Allotment No. 3. When, therefore, the grantors of lots in Allotment No. 3, in deeds from them conveyed an easement over lots 1 and 24 in Allotment No. 1, such grantors specifically designated such purchasers as those entitled to the privilege reserved in the original deed of Lots 1 and 24. The right to make such designation evidently passed to Bender by the deed from Sawyer and Haynes.

In the answer and cross-petition of the defendants, the prayer is that the court may declare a permanent easement over Lots 1 and 24 in Allotment No. 1, running with the land in favor of certain specifically designated purchasers of lots in Allotment No. 3.

Both the evidence and the law require that such prayer should be granted.

In **15 O. Jur., p. 13 et seq.**, the subject of easements is fully discussed.

The evidence in this case justifies the conclusion that the easement in question is one appurtenant to the lots in Allotment No. 3, where the owners of such lots have been designated in deeds to them as possessing such privilege. Although the deed from Sawyer and Haynes to Bender contained no reference to the easement in question, it is to be remembered that Bender was one of the original grantors of plaintiffs' property, and that it was in a deed from them to Black in 1919, that the original easement was set out. It was not until 1924 that Sawyer and Haynes sold out to Bender, who, it must also be remembered, is one of the original grantors, or the original grantor of lots in Allotment No. 3. Bender possessed an equal right with Sawyer and Haynes to make the designations.

It has been repeatedly held that courts in construing deeds containing reservations of easements may hear evidence, from which it may be determined what was the intention of the parties.

In a case relied upon by the plaintiffs, Metzger & Co. v Holwick 17 C. C. 605, at page 608, the Court quotes from an Illinois case.

" 'In construing deeds or other writings, courts must seek to ascertain and give effect to the intention of the parties. For that purpose, they may and will take notice of attendant circumstances, and by them determine the intention of the parties, the situation and location of the property, the manner in which it was used in connection with the reservation; the exception contained in all the deeds from Chanler clearly indicates an intention to create the alley for a right of way in the nature of an easement.' "

However, this case as an authority for the plaintiffs' main contention is shown to be easily distinguished from the case at bar, for later on the same page of the opinion the Court say:

"That is the condition in this deed; there is nothing said about the machine company having any other land; it does not refer to it, nor describe it; but just says in so many words, that he agrees to keep a way open fifteen feet wide, and does not say where, does not say for whose benefit."

In the instant case the exact location of the right of way was defined, and by the terms persons designated, it was understood by both grantors and grantees that these persons should be lot owners in Allotment No. 3 and such was not only the understanding of the parties. but for some twenty years the servient owners in every way cooperated to keep such right of way open and in repair.

**Morgan v Mason, 20 Ohio 402,** is also relied upon by plaintiffs for the proposition that an easement not in gross must be appurtenant to the dominant tenancy. The case when read seems to be more an authority that in succeeding deeds and conveyances the easement need not be specifically described, but passes as an appurtenance to the dominant tenancy.

**Boatman v Lasley, 23 Oh St 614,** on page **617** of the opinion the question decided is stated:

"Is a private right of way over the lands of another, in gross, such an interest or estate in land, as may be cast by descent, or may be assigned by the grantee to one who has no interest in the land? These are the only questions in this case."

Again, on page 618, it is stated in the opinion:

"Where the way is appendant or appurtenant to other lands, very different considerations arise. There the right attaches to the lands to which the way is appurtenant, because it is granted for the convenience of their occupation without respect to the ownership or number of occupants. In such case the right of way passes with the dominant estate as an incident thereto. A right of way appendant can not be converted into a way in gross, nor can a way in gross be turned into a way appendant."

The plaintiffs also rely on **Olmsted v Schrembs, 30 Oh Ap 430; Hunt v Held, 90 Oh St 280; and Frederick v Hay, et al., 104 Oh St 292,** all cases involving building restrictions.

Although the reservation of easement in the original deed to Black did contain a restriction against building upon the 20 feet reserved, the primary purpose of the language used was to reserve an easement.

Rules of construction such as those mentioned in the cases noted as well as the rule that the instrument must

448 -

be construed most strongly against him who writes it or conveys must not and cannot be employed to combat intentions which become manifest when all the circumstances surrounding the conveyance and creation of the easement are made known.

Again referring to **O. Jur., Vol. 15, page 18,** it is stated:

"It is often difficult to determine whether an easement is appurtenant or in gross. In case of doubt an easement is presumed to be appurtenant and not in gross. Whether or not an easement is in gross or appurtenant to the land depends not alone on the language of the instrument by which it is granted, but on circumstances, its intended use, and the occasion which gave rise to the necessity for its existence. It has been said that whether a way is appurtenant to land depends upon its relation to the land in respect of use, and not upon any correspondence with the title of the owner in respect to duration. Where it appears by a fair interpretation of the words of the grant that it was the intention of the grantor to reserve a right in the nature of a servitude or easement in the property granted, for the benefit of the other land of the grantor, which originally formed one parcel with the land conveyed, such right will be deemed appurtenant to the land of the grantor and binding on that conveyed to the grantee. A provision in a deed reserving the use for a driveway of a strip of the land conveyed, for the grantor, his heirs and assigns, has been said to create an easement appurtenant to the adjoining land retained by the grantor. In a case involving the question whether a way was appurtenant or in gross, the court observed that the deed did not refer to the land to which the way was claimed to be appurtenant. It is proper to look outside the instrument creating the easement in order to determine whether it is appurtenant or in gross. The court may look outside the deed to determine whether the owner of the easement owns land to which it may be appurtenant. If the court finds that there is no land to which the easement may be appurtenant, it will hold that the easement is not appurtenant, but in gross, even though the instrument creating the easement states that the easement is created for the owner thereof, his heirs and assigns."

It is our conclusion, therefore, that the prayer of the defendants was properly granted and the judgment is affirmed.

HILDEBRANT and MATTHEWS, JJ., concur.