[Cite as *Goralske v. Parsell*, 2016-Ohio-531.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## HANCOCK COUNTY

JAMES A. GORALSKE, ET AL.,

      PLAINTIFFS-APPELLANTS/
      CROSS-APPELLEES,                 CASE NO.  5-14-16

      v.

DANA PARSELL, ET AL.,               O P I N I O N

      DEFENDANTS-APPELLEES/
      CROSS-APPELLANTS.

Appeal from Hancock County Common Pleas Court
Trial Court No. 2013CV00449

Judgment Affirmed

Date of Decision:   February 16, 2016

APPEARANCES:

     *Robert A. Feighner, Jr.*  for Appellants/Cross-Appellees

     *Thomas D. Drake*  for Appellees/Cross-Appellants

**WILLAMOWSKI, J.**

{¶1} Plaintiffs-Appellants-Cross-appellees, James A. Goralske ("James"), Carol L. Goralske ("Carol"), Raymond R. Devore ("Raymond"), Rose A. Devore ("Rose"), Gary R. Deerwester ("Gary"), and Barbara J. Deerwester ("Barbara"), (collectively known as "Appellants"), bring this appeal from the judgment of the Court of Common Pleas of Hancock County denying their request for injunctive relief. Defendants-Appellees-Cross-appellants, Dana Parsell ("Dana") and Roxanne Parsell ("Roxanne"), (collectively known as "Appellees") bring a cross-appeal from the judgment of the Court of Common Pleas of Hancock County ordering them to pay damages for the expanding of a private drive. For the reasons set forth below, the judgment is affirmed.

*Factual Background*

{¶2} On August 12, 1964, the Hilltop Manor Subdivision was created by Kenneth and Elsie Dilts ("the Dilts"). Tr. 63. The subdivision provided for five lots and was accessed by a gravel drive. Jt. Ex. 1 and Tr. 75. The Dilts created certain restrictions for the subdivision on August 15, 1964. Jt. Ex. 2. The third restriction stated as follows.

> **3.    Easements for utility installations are reserved over and across portions of said lots as shown on the recorded plat and a forty (40) foot easement is reserved over, along and across portions of said platted lots for the purpose of a private roadway to provide ingress and egress from County Highway 220 to said platted lots.  Use of said private drive easement is reserved to the**

**original platters of said plat and their purchasers, executors and assigns for ingress and egress to the fields and lands adjoining said subdivision on the west. Said private driveway shall be maintained by all of the owners of lots in the subdivision and all expenses of maintenance and repair shall be borne equally by the lot owners regardless of their lot locations or the area of their lot which is subject to such driveway easement. For purposes of determining the necessity of maintenance, a majority of said property owners owning lands in the subdivision shall be required for a determination that maintenance is necessary, notice of the proposed maintenance and repair and estimated cost thereof shall be delivered personally or by United States mail to each lot owner and upon completion of said repairs or maintenance, each property owner shall, within thirty (30) days, pay his or their 1/5 share of such expense. And the collection of such proportionate share of each property owner shall be enforceable by action at law or equity by any one or more of the other property owners in the subdivision.**

Jt. Ex. 2 at 2-3. At the time of the creation of the subdivision, Rose was married to the son of the Dilts and the Dilts gave her and their son Lot 1 as a gift. Tr. 63. The young couple later purchased Lot 2 so that they would not have neighbors right beside them. Tr. 63. Rose was involved in the formation of the restrictions for the subdivision and indicated that she had not wanted the drive to be a public road. Tr. 79. The plat map itself indicates that no part of the drive was to be "dedicated to public use but are reserved to and for the benefit of the owners of the lots in this subdivision for the purposes of ingress and egress to the lots herein platted, for use both by the owners and their licensees and invitees." Jt. Ex. 1. Lot 3 was originally sold to Louise Bates, but she never built a home on the site. Tr.

102.  Lot 4 was originally sold to Samuel and Patricia Copus.  Tr. 102.  Lot 5 was originally sold to Richard Brink.  Tr. 103.  The path of the drive has not changed since it was originally put into place, though blacktop was added in 1989.  Tr. 75, 88.  The Dilts did not have any input into the decision to add blacktop to the drive and the expense was divided equally among the three families residing in Hilltop Manor.  Tr. 75.

{¶3} As of October 2, 2013, Hilltop Manor still only had three homes in it.  Jt. Ex. 4.  Rose and Raymond owned the house located on Lots 1 and 2.  Tr. 62.  Lots 3 and 4 were owned by Gary and Barb.  Tr. 62.  James and Carol owned Lot 5.  Tr. 62.  Over the years, the only party to use the private drive besides the residents of Hilltop Manor and their guests were the Dilts and Dana.[1]  Tr. 77.  Not even the school bus came onto the drive as the residents did not want it to be considered a public drive.  Tr. 79.  A sign located at the beginning of the drive that indicates that it is private property had been placed there prior to 1985.  Tr. 157.  The residents know that the drive does not meet the current specifications for a private drive as to the thickness and width, however that was not an issue when it was first added in 1964 by the Dilts or when it was blacktopped in 1989.  Tr. 162.  The residents have had emergency responders come up the drive at various times,

---

[1] The Dilts sold the property to the Copus family who then sold the property to Appellees.  Thus, Dana is a purchaser of the property and assignee of the Copus family.

and there were no problems with them using the drive or with them damaging any landscaping when they arrived or left. Tr. 354-357.

{¶4} The land to the west of Hilltop Manor was used for farming and recreational purposes by the Dilts, but no home was built on it. Tr. 83. The Dilts did not personally farm the land, but leased it to others for the purpose of farming. Tr. 84. Those farmers would access the property via the gravel drive through Hilltop Manor. Tr. 84. The Dilts also allowed family and friends to ride dirt bikes and hunt on the property. Tr. 83-84. When the Dilts moved away from the area, they no longer leased it for farming. Tr. 84. Later the Dilts planted trees on the land. Tr. 85. Eventually, the Dilts sold the land to Samuel and Patricia Copus. Tr. 88. The Copus family did not develop the land or farm it. Tr. 123. However, for many years the Copus family did allow James to hunt on the property. Tr. 140.

{¶5} In September of 2011, Dana and Roxanne purchased the land to the west of Hilltop Manor from Patricia Copus. Tr. 29. Dana, who is a professional surveyor, initially spoke with Appellants about him building a home for himself, his father, and his father-in-law on the property. Tr. 28, 141 Dana first spoke with Appellants about his plans on September 12, 2011, which was prior to the September 30, 2011, closing date on the property. Tr. 141, 245. At that time, Appellants did not appear to dispute that he could use the private drive to access his property. Tr. 242. Dana told them at that time that he would like access to the

public waterline and sewer system and wanted to know if he could run the utilities through the road easement. Tr. 244-251. Appellants told him no and indicated they had no interest in tapping into the public water or sewer system. Tr. 248. Dana also indicated that he wanted to widen the drive from 10 foot to 20 foot and that the drive would need a minimum of 3 ½ inches of asphalt rather than the 2 inches it was at that time. Tr. 257. Bringing in the heavy equipment would cause damage to the existing drive and would increase the noise for the Appellants. Tr. 51, 57-58. Additionally, reconstruction of the drive would cause inconvenience to Appellants as they would not be able to access their homes by vehicle while it was being completed. Tr. 58. Dana knew that his property was not land-locked, but the difficulty and expense of reaching the property via a new access off CR 220 was prohibitive to him. Tr. 36, 265-270.

{¶6} After some consideration, Dana decided to proceed to develop the property into an eight lot subdivision, with one of the lots reserved for his family. Tr. 275. The subdivision was Buckeye Ridge and provided for a cul de sac access from the Hilltop Manor Drive. Jt. Ex. 3. He proceeded with his plans and had spent a great deal of time and money getting the necessary permits to build the subdivision. Tr. 315. Dana estimated that the remaining cost of the subdivision would be $225,000, but if he had to build his own access from CR 220, the cost would be over $500,000. Tr. 315-16. However, Dana did not know the full costs

as he had not spoken to anyone about giving him any estimates. Tr. 333. To use the existing drive, Dana would have to widen the drive and remove some mature trees, rocks, and bushes that were in the easement to avoid damage to the heavy equipment. Tr. 48-50. Some of those trees had been in place for over 30 years. Tr. 93, 143.

{¶7} At the initial meeting with Appellants, Appellants were concerned about the amount of traffic on the drive after Dana told them he wanted to build three homes on the property. Tr. 142. Due to their concerns about excessive development of the adjoining property, Appellants unanimously voted to set a weight limit of 6,000 lbs. on the private drive to prevent access by heavy equipment and notified Appellees of this decision on February 24, 2012. Jt. Ex. 7. A sign was posted at the end of the drive indicating such. Jt. Ex. 19. James acknowledged that this was done when they learned about plans for a new subdivision. Tr. 156. James later became suspicious as to what Dana was doing with the property, so went to regional planning in the summer of 2013 and learned how far advanced into the planning the Buckeye Ridge development was. Tr. 144-46. James was concerned that the additional traffic on the drive caused by the subdivision would result in damage to the drive and his land along with a

devaluation of his property.[2]  Tr. 151.  Rose was concerned that the construction of the subdivision would result in damage from the heavier equipment on the drive, additional noise, additional dust on her property, and additional traffic and damage to the drive after the subdivision was completed.  Tr. 92.  Appellants, through counsel, sent a letter to Appellees explaining their position that they did not wish for the new subdivision to have use of the private drive used to access Hilltop Manor.  Jt. Ex. 6.

*Procedural Background*

{¶8} On September 5, 2013, Appellants filed a petition for a temporary preventative injunction to stop Appellees from using their private drive to move heavy equipment to Appellees' adjoining property.  Doc. 1.  Appellants claim that the private drive was solely for the purpose of providing access to the lots of the subdivision and was not meant for general transportation by those outside of the subdivision.  Doc. 1.  Appellants complained that Appellees wanted to alter the drive by destroying landscaping and using it to access adjoining property with heavy equipment so that a new subdivision could be built.  *Id.*  This use was desired even though Appellees had the ability to build their own access drive from the public road and did not need to use the private drive of the subdivision.  *Id.*  Appellees filed their answer on September 17, 2013.  Doc. 10.  The answer

---

[2]  James had placed some large rocks along the curve of the drive by his property to prevent the guests of Rose and Raymond from cutting the curve too close and leaving ruts in his yard.  Tr. 143.  They were later removed.  Tr. 38.

contained a counterclaim alleging that they had the right to access the private drive easement. *Id.*

{¶9} A bench trial was held on this matter on October 2 and October 28, 2013. Doc. 25. On May 21, 2014, the trial court entered its decision and order granting Appellees access to the drive, but requiring them to pay for the damages as a result of the increased traffic and weight of the trucks. Doc. 31. The judgment entry on this decision was filed by the trial court on June 17, 2014. Doc. 32. On June 18, 2014, Appellants filed their notice of appeal. Doc. 37. Appellees filed their notice of cross-appeal on July 16, 2014. Doc. 45. On appeal, Appellants raised the following assignments of error.

### First Assignment of Error

**The trial court erred in [its] application (or lack thereof) of the principles set forth in Ohio Supreme Court case <u>Apel, et al. v. Katz, et al.,</u> 83 Ohio St.3d 11 (1998) and <u>Heiney v. Godwin</u>, 9th District Court of Appeals, 2005 WL 2758487(2005) by finding an easement exists in favor of [Appellees] and that same "runs with the land" against the manifest weight of the evidence.**

### Second Assignment of Error

**The trial court erred by not finding Kenneth & Elsie Dilts did nothing more than make a reservation in the restrictive easement document subject to this case for ingress and egress to the lands to the west that they were retaining.**

### Third Assignment of Error

**The trial court erred when it failed to grant injunctive relief to [Appellants].**

## Fourth Assignment of Error

**The Court erred when it found and/or considered no feasible alternative route for ingress or egress to [Appellee's] property to the west existed.**

## Fifth Assignment of Error

**The trial court erred by not setting forth a time-line for which [Appellee] needs to repair damage to the subject private road during construction of the proposed Buckeye Ridge Subdivision, including any and all damage caused by construction of housing, utilities and any other action undertaken in the creation and construction of the Buckeye Ridge Subdivision.**

## Sixth Assignment of Error

**The trial court erred by finding that [Appellants], upon completion of the Buckeye Ridge Subdivision, shall be responsible for all expenses of maintenance and repair of the private roadway through Hilltop Manor Subdivision.**

On cross-appeal, Appellees raise the following assignments of error.

## First Assignment of Error

**The trial court committed error when it ordered that [Appellees] shall be responsible for damages caused to the private drive through Hilltop Manor during construction of the Buckeye Ridge Subdivision.**

## Second Assignment of Error

**The trial court committed error when it ordered that [Appellees] shall be responsible for any work in the widening of the private road through Hilltop Manor in order to comply with requirements set forth by the Hancock County Regional Planning Commission or any other authority.**

*Easement Law*

{¶10} In this case, there is a dispute as to the type of easement and as to what the language legally means. The construction of an instrument of conveyance is a question of law and is thus reviewed using a de novo standard of review. *Walbridge v. Carroll*, 172 Ohio App.3d 429, 2007-Ohio-3586, ¶16, 875 N.E.2d 144 (6th Dist.). "To determine whether an easement is appurtenant or in gross, it is necessary to determine the intent of the parties from the four corners of the document involved and, if necessary, the surrounding circumstances." *Id.* *See Woodyard v. Chesterhill*, 5th Dist. Morgan No. 05–CA–18, 2006-Ohio-634; *Am. Premier Underwriters, Inc. v. Marathon Pipe Line Co.*, 3d Dist. Mercer No. 10–2001–08, 2002-Ohio-1299; and *Siferd v. Stambor* , 5 Ohio App.2d 79, 214 N.E.2d 106 (3d Dist. 1966).

{¶11} Easements are divided into two classes: easements appurtenant and easements in gross. "An easement appurtenant requires a dominant tenement to which the benefit of the easement attaches or 'appertains' and a servient tenement upon which the obligation or burden rests." *Lone Star Steakhouse & Saloon of Ohio, Inc. v. Ryska*, 11th Dist. Lake No. 2003-L-192, 2005-Ohio-3398, ¶ 24. "Easements appurtenant" run with the land and thus transfer with the property as long as some record of the easement appears in the chain of title of the dominant property. *Pence v. Darst*, 62 Ohio App.3d 32, 574 N.E.2d 548 (2d Dist. 1989).

An "easement in gross" generally does not have a dominant estate and is purely servient, existing entirely independent of ownership of the land. *DeShon v. Parker*, 49 Ohio App.2d 366, 361 N.E.2d 457 (9th Dist. 1974). In this type of easement, it is not necessary that the grant expressly refer to a dominant estate nor is it essential that the estate be adjacent or contiguous. *Id.*

{¶12} An easement is appurtenant when the language of the instrument creating it and the surrounding facts indicate that it was created for the benefit of the land and not just to form a personal right benefit. *Id.* "Where it appears by a fair interpretation of the words of the grant that it was the intention of the grantor to reserve a right in the nature of a servitude or easement in the property granted, for the benefit of the other land of the grantor, which originally formed one parcel with the land conveyed, such right will be deemed appurtenant to the land of the grantor and binding on that conveyed to the grantee." *Nolan v. Bender*, 61 N.E.2d 628, 632 (9th Dist. 1944). When an estate can fairly be construed as appurtenant, it generally will not be considered to be in gross. *DeShon, supra.*

{¶13} Once an easement has been established, the owner of the dominant estate does not have the authority to do anything desired with the property as it does not belong to the dominant estate, the owner of the dominant estate merely has a right of use. "It has long been the rule in Ohio that although the owner of the dominant estate may not increase the burden or materially enlarge his right over

the servient estate, changes in the use of the easement are permitted to the extent they result from normal growth and development of the dominant land, and are a proper and reasonable use of the easement." *Myers v. McCoy*, 5th Dist. Delaware No. 2004CAE07059, 2005-Ohio-2171, ¶2 (citing *Erie Railroad Company v. S.H. Kleinnman Realty Company*, 92 Ohio St. 96, 110 N.E. 527 (1915)). However, an easement holder may not impose additional burdens upon the servient estate by engaging in additional usage of the easement. *Centel Cable Television Co. of Ohio, Inc. v. Cook*, 58 Ohio St.3d 8, 567 N.E.2d 1010 (1991) (holding that allowing the stringing of coaxial cable in the easement along with other utilities was not an additional burden). If the dominant estate does increase the burden, the easement may be terminated, but that remedy is not required. *Walbridge v. Carroll*, 6th Dist. Wood No WD-08-071, 2009-Ohio-5183, ¶17 (holding that although the village had abused the easement by allowing trespassing vehicles access to the easement, termination was not required and was not the appropriate remedy). Although disputes over the use of an easement may have an adequate remedy at law, courts retain the ability to grant equitable relief. *Chartiers Oil Co. v. Curtiss*, 24 Ohio C.D. 106 (1911).

*Is the easement appurtenant or in gross?*

**{¶14}** In the first and second assignments of error, Appellants claim that the trial court erred in finding that the easement was appurtenant and not a mere

reservation of the right to ingress and egress for the Dilts. No specific words are required to create an easement by express grant as long as the intent of the parties is clear from the document. *Cincinnati Entertainment Assoc. v. Bd. of Commissioners,* 141 Ohio App.3d 803, 753 N.E.2d 884 (1st Dist. 2001). The undisputed evidence in this case was that the Dilts placed the following language in the Restrictions to the Hilltop Manor Subdivision:

> **[A] forty (40) foot easement is reserved over, along and across portions of said platted lots for the purpose of a private roadway to provide ingress and egress from County Highway 220 to said platted lots.** *Use of said private drive easement is reserved to the original platters of said plat and their purchasers, executors and assigns for ingress and egress to the fields and lands adjoining said subdivision on the west.*

Jt. Ex. 2, 2 (emphasis added). The restrictions were recorded on August 17, 1964, in the Hancock County Record of Plats, Book 6, Page 497. *Id*. Additionally, the easement was clearly shown on the plat map, which was recorded on August 12, 1964, in Volume 7, Page 15 of the Hancock county Plat Records. Jt. Ex. 1. The plain language of the restrictions indicates that this was an easement and that the dominant estate was the land belonging to the Dilts, as the original platters. They specifically reserved the right to use a forty foot section as the private drive to obtain access to the land adjoining the subdivision on the west. Additionally, they reserved this right for their "purchasers, executors and assigns". The dominant estate is the land to the West and it adjoins the Hilltop Manor Subdivision. As

discussed above, easements are generally determined to be appurtenant and run with the land if there are dominant and servient estates, particularly if the estates are adjoining estates. Based upon the evidence before it, the trial court did not err in finding that this was an easement appurtenant and that it ran with the land. Therefore the first and second assignments of error are overruled.

*Injunctive Relief*

{¶15} In the third assignment of error, Appellants claim that the trial court erred in not granting injunctive relief to prevent Appellees from using the private drive to access the land adjacent to Hilltop Manor Subdivision. As discussed above, the easement provides that the original platters, their purchasers, executors or assigns have the right to use the private drive for ingress and egress to the land to the west of the subdivision. Additionally, the trial court correctly found that this was an easement appurtenant that runs with the land. The use of terms of inheritance or succession are not necessary to create a fee simple estate. R.C. 5301.02. Every conveyance of the real estate will transfer all rights to the property unless the deed clearly states otherwise. *Id.* In this case, the Dilts sold the property to the Copus family who then sold the land to Appellees. The deeds transferred all of the interest in the property possessed by the prior owners. The deed from the Copus family to the Appellees did not specifically convey a lesser estate than that possessed by the Copus family. Thus, Appellees are purchasers of

the dominant estate and are entitled to the benefit of the easement. This means they are entitled to use the private drive for the sole purpose of ingress and egress.[3] The trial court did not err in denying injunctive relief which would prohibit Appellees or their purchasers from using the private drive for the purpose of ingress and egress. Appellants' third assignment of error is overruled.

{¶16} In the fourth assignment of error, Appellants claim that the trial court erred by failing to consider alternate paths of ingress and egress. This court notes that since an express easement reserving the right of the dominant estate holders to use the private drive for the purpose of ingress and egress was created, Appellees have a legal right to use the private drive without consideration as to whether there is another option for accessing the property. Consideration of alternative routes would only be relevant if this easement was one implied due to the condition of the land.

{¶17} However, the trial court did consider the alternative paths of ingress and egress before reaching its conclusion. The trial court in its judgment entry stated that "[n]o feasible alternative route for ingress and egress to Buckeye Ridge Subdivision exists." Doc. 31 at 4. During the trial, Dana testified as to the difficulties in creating alternative routes of access. Matthew Cordonnier, the director of the Hancock County Regional Planning Commission testified that Dana

---

[3] The terms of the easement do not permit Appellees to use the drive as a route for running the utilities or for any purpose other than ingress and egress.

would not be eligible for a curb cut off of CR 220 without a variance. Tr. 212. Although there would be room for a curb cut after the creek, placing a drive in that location would cause other issues that would require additional permits from various agencies. Tr. 227-28. Dana also testified that if he accessed the property off of CR 220 instead of from the private drive through Hilltop Manor, he would not be able to create a cul de sac and that the cost of the project would exceed $500,000.00.[4] Tr. 276, 315. Steve Wilson from the County Engineer's Office testified that the alternative sites for a drive would go through a flood plain and would require a special development permit. Tr. 339-40. Wilson also testified that the cost of building the road directly from CR 220 would be several hundred thousand dollars. Tr. 344. Given all of this evidence, the trial court could reasonably conclude that there was no other practical access to the property other than the private drive through Hilltop Manor. Thus, the fourth assignment of error is overruled.

*Who should pay if the private drive is widened?*

{¶18} Appellees claim in their second assignment of error raised on the cross-appeal that the trial court erred in ordering them to pay the cost of widening the private drive. Appellees argue that since the easement requires the lot owners in Hilltop Manor to be responsible for all maintenance and repairs to the road, the

---

[4] Dana was estimating the total costs as he admitted that he had not spoken with anyone to obtain actual cost estimates. Tr. 333.

cost of widening the road should be borne by Appellants. Although Appellees may use the drive for the purpose of ingress and egress, they do not have the right to dictate the width or depth of the drive. The terms of the easement leave control over all maintenance and repair of the private drive to the owners in Hilltop Manor. The Dilts did not reserve any rights in this matter. All determinations of this matter were to be determined by the majority vote of the Hilltop Manor lot owners. The evidence in this case was that the lot owners unanimously voted not to widen the drive or to repave it. The original drive was gravel. The decision to apply blacktop to the gravel drive was made by the lot owners without input from the Dilts. The easement merely grants Appellees the right to use whatever private drive is there, and does not require Appellants to pay for the private drive as Appellees wish to have it. Nothing in the easement permits the Appellees to mandate the width or thickness of the private drive, or even that it be paved. Although there was testimony that the private drive as it existed at the time of the hearing would not be approved by the County for the new subdivision, there was no evidence presented that it could not remain as it was at that time. If Appellees wish to widen the private drive and to alter the thickness of it, they do have the right to improve the easement. 36 Ohio Jurisprudence 3d, Easements and Licenses Section 49 (2015) (citing *Beavertown Cemetery Ass'n v. Summers*, 2d Dist. Montgomery No. 551, 1924 WL 1892 (Jan. 10, 1924)). However, pursuant to the

terms of the easement, Appellees cannot force Appellants to do so. It would be inequitable for Appellees to unilaterally decide to alter the private drive so that they can benefit from it and then expect the lot owners, who do not wish to alter the private drive, to pay for it. The trial court has the discretion to impose the equitable remedy that if Appellees wish to alter the private drive, then they must pay to have it done. Based upon the evidence before this court, we do not find that the trial court abused its discretion in ruling as it did. Appellees second cross-assignment of error is overruled.

*Damage to the Private Drive*

{¶19} Appellees argue in their first assignment of error of the cross-appeal that the trial court erred in requiring them to pay to repair any damage caused to the private drive by the development of Buckeye Ridge Subdivision. As discussed above, Appellees allege that since the easement requires the owners of Hilltop Manor Subdivision to pay for all maintenance and repairs to the private drive, Appellees should not have to pay for the damage. The trial court specifically addressed this issue and determined that "[t]o require [Appellants] to pay for damage caused by [Appellees'] use of the easement with heavy machinery and equipment would be unjust." Doc. 31 at 9. The owner of the easement is under a duty to make such repairs as necessary to prevent the use of the easement from becoming an annoyance or nuisance to the owner of the servient estate. *Market*

*Enterprises, Inc. V. Summerville*, 5th Dist. Stark No. 2001CA00315, 2002-Ohio-3692. There is no dispute that the easement does require the owners of Hilltop Manor to pay for repairs and maintenance to the private drive through Hilltop Manor. However, those anticipated repairs would be for normal wear and tear caused by reasonable use, not regular use by heavy equipment which will be required to develop the Buckeye Ridge subdivision. The trial court determined that Appellees had the right to a reasonable use of the easement. A reasonable use would not include damaging the private drive and then expecting someone else to pay for the damage caused by that usage. The evidence before the trial court is that the heavy equipment would likely cause more than normal wear and tear to the private drive, which is not what was anticipated by the reasonable usage of the easement. As discussed above, the trial court has the authority to impose remedies in equity for easements. Thus the trial court's determination that Appellees should be responsible for the damages caused by their usage of the easement is supported by the evidence and is not an abuse of discretion. Appellee's second assignment of error of the cross-appeal is overruled.

{¶20} In the fifth assignment of error of the direct appeal, Appellants claim that the trial court erred by not ordering a deadline for Appellees to repair any damages to the private drive caused by Appellees' use of the drive to develop the subdivision. Appellants have pointed to no statute or case law that would require

the trial court to impose a deadline for the repair. Our own review of the law in Ohio also does not provide for any such requirement. Although this court understands the concerns raised by Appellants given the background of this case, the trial court did not err as a matter of law in failing to set forth a time deadline for all repairs to be made. If the repairs are not made within a reasonable time, Appellants will be able to seek a remedy through a show cause motion rather than filing a new complaint. The fifth assignment of error is overruled.

{¶21} Finally, Appellants claim in the sixth assignment of error of the direct appeal that the trial court erred by requiring Appellants to be solely responsible for all maintenance of the private drive through Hilltop Manor. Appellees claim that this is what is required by the plain language of the easement. Generally, the burden for making repairs caused by the use of an easement falls upon the owner(s) of the dominant estate. *Id.* However this duty can be contracted away by an express agreement of the parties. *Id.*

{¶22} In this case, there is an express agreement that the lot owners of Hilltop Manor will be responsible for all maintenance and repairs to the private drive through Hilltop Manor. This would seem to require Appellants to pay all maintenance even after eight additional families are using the private drive. However, the agreement also states that all maintenance and repairs will only occur upon the majority vote of the Hilltop Manor lot owners. As discussed

above, the easement allows Appellees, and the future purchasers of Buckeye Ridge, to use the private drive for the purpose of ingress and egress, but not to dictate the condition of the private drive, including the width or depth of it.

{¶23} The evidence in this case was that the lot owners unanimously voted not to widen the private drive or to repave it. By requiring Appellants to pay to maintain and repair damage to a private drive different than what they voted to have, Appellees have exceeded the terms of the easement. Additionally, the amount of traffic on the private drive will potentially go from three households to eleven households, a substantial increase. By requiring the owners of Hilltop Manor to bear the burden of providing a private drive for more families than was originally involved and for a private drive different from what the terms of the easement required may impose additional burdens and expenses upon the servient estate which are not provided for in the grant of the easement. The dominant estate may not impose new and additional burdens upon the servient estate. *Lakewood Homes, Inc. v. BP Oil, Inc.*, 3d Dist. Hancock No. 5-98-29, 1991-Ohio-851. "Generally the court should presume that the parties contemplated that normal development would result in some changes in * * * the use of the easement, even if it were unlikely that the parties anticipated the specific developmental changes." *Crane Hollow Creek, Inc. v. Marathon Ashland Pipe Line, LLC,* 138 Ohio St.3d 57, 67, 740 N.E.2d 328 (4th Dist. 2000).

{¶24} This situation then leads to the issue of whether the additional burdens are of such a nature as to require termination of the easement or are simply the result of an expansion due to natural development and use of the property. *Myers*, *supra*. Although this issue was not decided by the trial court, as noted by the dissent, the issue was not raised before the trial court. As it was not raised for consideration by the trial court and was not raised by the parties on appeal, it need not be addressed sua sponte by this court.

{¶25} This situation is unusual in that it is not the use of the easement that has been exceeded, but the contractual terms of the easement which have been disregarded, i.e. change of the private drive without the consent of the Hilltop Manor lot owners, whose consent is required by the terms of the easement. The terms of the easement continue to provide that the Hilltop Manor lot owners are responsible for all maintenance and repairs to the road through Hilltop Manor as a majority of said Hilltop Manor lot owners may determine to be necessary.[5] The trial court had all of this information before it when it reached its decision. The trial court had clearly considered the equities of the situation as shown by the orders that Appellees pay to alter the private drive and to repair the damage caused by development after it is complete. There is competent, credible evidence to

---

[5] While this requirement and the determination of when maintenance is necessary may lead to future issues, it is not ripe for review at this time. Contrary to the argument of the dissent, nothing in the opinion of the trial court allows Appellees the authority to determine when maintenance is necessary. The full use of the easement granted is not the same as maintenance.

support the determination of the trial court. We cannot find that the trial court abused its discretion. Appellants' sixth assignment of error is overruled.

{¶26} Having found no error in particulars assigned and argued either on direct appeal or on the cross-appeal, the judgment of the Court of Common Pleas of Hancock County is affirmed.

*Judgment Affirmed*

**SHAW, J., concurs.**

**ROGERS, P.J., dissents.**

{¶27} An express easement, like any contract, must be interpreted according to the language included in the instrument granting such easement. In this case, the language provided that the Appellants were solely responsible for deciding when maintenance was required for the drive. Appellees, as subsequent purchasers of the dominant estate, had no right to dictate when maintenance was required. By allowing the Appellees to do so, the trial court abused its discretion. Further, the trial court abused its discretion when it found that the Appellees' purported use of the easement was reasonable. Therefore, I respectfully dissent.

*Appellees did not retain a right to dictate*
*when maintenance was required*

{¶28} "When an easement is granted by an express grant, the extent and limitations upon the dominate [sic] estate's use of the land depends upon the

-24-

language of the granting instrument." *Myers v. McCoy*, 5th Dist. Delaware No. 2004CAE07059, 2005-Ohio-2171, ¶ 16, citing *Alban v. R.K. Co.*, 15 Ohio St.2d 229 (1968). Thus, a trial court may not redefine or limit the scope of an easement. *Myers* at ¶ 20.

{¶29} As the majority writes, "Once an easement has been established, the owner of the dominant estate does not have the authority to do anything desired with the property as it does not belong to the dominant estate, the owner of the dominant estate merely has a right of use." (Majority Opin., at ¶ 13). Additionally, "changes in the use of the easement are permitted to the extent they result from normal growth and development of the dominant land, and are a proper and reasonable use of the easement." *Myers* at ¶ 2, citing *Erie RR. Co. v. S.H. Kleinman Realty Co.*, 92 Ohio St. 96 (1915). The easement may be terminated if the dominant estate increases the burden upon the servient estate. *Walbridge v. Carroll et al.*, 184 Ohio App.3d 355, 2009-Ohio-5183, ¶ 17 (6th Dist.).

{¶30} "[U]nless the owner of the servient estate * * * is bound to make repairs, '[t]he burden devolves upon the owner of the dominant estate, of making whatever repairs are necessary for his use [of the easement].' " *Market Ents., Inc. v. Summerville*, 5th Dist. Stark No. 2001CA00315, 2002-Ohio-3692, *2 (July 15, 2002), quoting *Natl. Exchange Bank v. Cunningham*, 46 Ohio St. 575, 589 (1889).

{¶31} The easement in question is found in the express language of the Restrictions to Hilltop Manor Subdivision. It states, in relevant part,

> [A] *forty (40) foot easement* is reserved over, along and across portions of said platted lots for the purpose of a private roadway to provide ingress and egress from County Highway 220 to said platted lots. Use of said private drive easement is reserved to the original platters of said plat and their purchasers, executors and assigns for *ingress and egress* to the fields and lands adjoining said subdivision on the west. Said private driveway shall be maintained by all of the owners of lots in the subdivision *and all expenses of maintenance and repair shall be borne equally by the lotowners* regardless of their lot locations or the area of their lot which is subject to such driveway easement. *For purposes of determining the necessity of maintenance, a majority of said property owners owning lands in the subdivision shall be required for a determination that maintenance is necessary * * *.*

(Emphasis added.) (Docket No. 1, Ex. B, p. 2).

{¶32} Given that the easement in this case is an express easement, the trial court was, and this court is, bound by the language chosen by the Dilts when they drafted the document. *See State ex rel. Wasserman v. City of Fremont*, 140 Ohio St.3d 471, 2014-Ohio-2962, ¶ 28, citing *Alexander v. Buckeye Pipe Line Co.*, 53 Ohio St.2d 241, 246 (1978) ("When the terms in an easement are clear and unambiguous, a court cannot create a new agreement by finding an intent not expressed in the clear language employed by the parties."), *superseded by statute on other grounds as stated in Great Invest. Properties, L.L.C. v. Merritt*, 3d Dist. Marion No. 9-09-36, 2010-Ohio-981, ¶ 13; *see also Myers*, 2005-Ohio-2171 at ¶ 20.

{¶33} Several different aspects of the easement are clearly and unambiguously stated in the instrument's language.[6] First, the instrument provides that the Appellees are entitled to the use of the full width of 40-feet in the easement even though the current drive is only 10-feet wide. *Myers* at ¶ 23. Second, the use of the easement is limited to ingress and egress from County Highway 220 to the dominant estate. Third, the Appellants are responsible for the costs of any and all maintenance and repair performed on the easement. This is contrary to the common rule that the dominant estate owner is required to pay these costs. *Summerville*, 2002-Ohio-3692 at *2. Finally, the Appellants have the sole authority to determine if maintenance is necessary. The Appellees, through the language chosen by the Dilts, lost any power to participate in this decision making process. The majority discusses these points in various areas of their opinion, although they do not explicitly state the right to the use of the full 40-feet width. (Majority Opin., ¶ 15, 18-19).

{¶34} In the same way that the responsibility of paying the costs to maintain and repair an easement can be contractually shifted from the dominant

---

[6] Although the language of the easement is clear and unambiguous, the parties' intentions were further evident by the language contained in the plat map itself. It states, in relevant part, "The roads and right of ways designated on this plat are reserved by the plattor and no part of the same are dedicated to public use but are reserved to and for the benefit of the owners of the lots in this subdivision for the purposes of ingress and egress to the lots herein platted, for use both by the owners and their licensees and invitees." Jt. Ex. 1. This language suggests that the easement was to be enjoyed by all the owners in Hilltop Manor for the purposes of accessing their properties. With the Appellees' plan to build an additional eight lots, this will have an effect equivalent of becoming a public road. This is directly contrary to the true intentions of the parties as indicated in the plat map language.

estate owner to the servient estate owner pursuant to *Summerville* et al., then it is certainly possible to contractually waive any right to determine whether maintenance is necessary. An easement is a contract. *See Lakewood Homes, Inc. v. BP Oil, Inc.*, 3d Dist. Hancock No. 5-98-29, 1999 WL 693152, *4 (Aug. 26, 1999), quoting *Skivolocki v. East Ohio Gas Co.*, 38 Ohio St.2d 244 (1974), paragraph one of the syllabus. "When interpreting the terms of an easement right-of-way, [an appellate court] must follow the rules of contract construction 'so as to carry out the intent of the parties, as that intent is evidenced by the contractual language.' " *Id.* In drafting the restrictions to Hilltop Manor, the Dilts decided to waive any rights they had in determining whether and when the drive would require maintenance. As purchasers of the dominant estate once owned by the Dilts, Appellees were bound by the same restrictions as the Dilts were once. Thus, the only people who could determine whether and when maintenance was required were the Appellants. This relationship between the Appellants and the Dilts was clearly established in the record. As the majority notes, "The path of the drive has not changed since it was originally put into place, though blacktop was added in 1989. The Dilts did not have any input into the decision to add blacktop to the drive and the expense was divided equally among the three families residing in Hilltop Manor." (Citations omitted.) (Majority Opin., ¶ 2). The majority, later in their opinion, reiterates this point. (*Id.* at ¶ 18).

{¶35} By allowing the Appellees to dictate whether maintenance of the drive was necessary, the trial court created a new agreement that was not evidenced in the express language of the easement.[7] *See Alexander*, 53 Ohio St.2d at 246. "A court abuses its discretion if it alters an established easement or requires a party to accept an altered easement in substitution of the original." *Myers*, 2005-Ohio-2171 at ¶ 18, citing *Munchmeyer v. Burfield, et al.*, 4th Dist. Washington No. 95CA7, 1996 WL 142579 (Mar. 26, 1996). Thus, I would have found that the trial court abused its discretion when it ruled in favor of the Appellees.

*Appellees' purported use is not reasonable*

{¶36} Assuming, arguendo, that Appellees were entitled to dictate whether maintenance was necessary, I would nonetheless find that the trial court abused its discretion as the Appellees' purported use would result in a substantial burden to the Appellants.

{¶37} Although the dominant estate owner may make improvements or repairs to an easement, it may not impose additional burdens upon the servient estate in the process. *Lakewood Homes*, 1999 WL 693152 at *2. Such changes

---

[7] Additionally, the trial court's judgment fails to limit the scope of the Appellees' ability to determine when maintenance is necessary. For instance, could the Appellees require the Appellants to clear snow off the drive in the winter? The trial court's judgment suggests that this is a possibility. The Appellant's have not permitted the entrance of school buses in the past in an attempt to prevent the private drive from appearing as a public way. Will the trial court order that buses be permitted ingress and egress to the new development? How about trash collection vehicles? Although these questions are not ripe for review, they are legitimate concerns as to the trial court's "equitable" decision in this case.

-29-

"are permitted to the extent they result from normal growth and development of the dominate [sic] land, and are a proper and reasonable use of the easement." *Myers* at ¶ 21, citing *Erie RR. Co.*, 92 Ohio St. 96. "The issue of whether the easement was abused or simply expanded from natural development and use of the property is an issue of fact." *Myers* at ¶ 22, citing *Hiener v. Kelley*, 4th Dist. Washington No. 98CA7, 1999 WL 595363, *11 (July 23, 1999).

{¶38} At several points throughout their opinion, the majority states that the Appellees have either exceeded the scope of the easement with Appellees' purported use of the easement or that the purported use would be unreasonable. Specifically, the majority writes that

> A reasonable use would not include damaging the private drive and then expecting [the Appellants] to pay for the damage caused by that usage. The evidence before the trial court is that the heavy equipment would likely cause more than normal wear and tear to the private drive, which is not what was anticipated by the reasonable usage of the easement.

(Majority Opin., ¶ 19). Four paragraphs later, "By requiring Appellants to pay to maintain and repair damage to a private drive different than what they voted to have, Appellees have exceeded the terms of the easement." (*Id.* at ¶ 23). They continue,

> Additionally, the amount of traffic on the private drive will potentially go from three households to eleven households, a substantial increase. By requiring [Appellants] to bear the burden of providing a private drive for more families than was originally involved and for a private drive different from what the terms of the

-30-

easement required may impose additional burdens and expenses upon the servient estate which are not provided for in the grant of the easement.

(*Id.*)

{¶39} The majority fails to address another burden that falls upon the Appellants – the burden of removing any obstructions on the easement. In the trial court's entry denying injunctive relief, the court noted, "To require [Appellants] to pay for damage caused by [Appellees'] use of the easement with heavy machinery and equipment would be unjust." (Docket No. 31, p. 9). Interestingly, it then ordered that "[Appellants] shall work in a timely fashion to remove all obstacles currently intruding upon the 40-foot easement and allow [Appellees] to perform work expanding and extending the Hilltop Manor roadway." (*Id.*) Specifically, the Appellants would be financially responsible for removing "some mature trees, rocks, and bushes that were in the easement to avoid damage to the heavy equipment. Some of those trees had been in place for over 30 years." (Citations omitted.) (Majority Opin., ¶ 6). Further, Dana testified that there were "a lot of large trees" and "[a] lot of small trees" inside the easement. Trial Tr., p. 281. Although Dana testified at length about the amount of money it would take to finish the subdivision project, no testimony was heard regarding the cost of removing the obstructions (trees, rocks, etc.). Without speculating specific amounts, it is safe to assume that the removal of trees, including mature 30-plus-

year-old trees, is not cheap. Thus, this responsibility is but another burden that falls upon the Appellants given the trial court's handling of the case.

{¶40} Given the severity of the burden inflicted upon the Appellants, the Appellees' purported use of the easement was not a proper and reasonable use of the result of the natural development of the land, and requires that the easement be terminated.

*Conclusion*

{¶41} The trial court abused its discretion when it denied the Appellants injunctive relief. The trial court was willing to implement the express language of the easement instrument to find that Appellants were required to pay for the maintenance and repair of the drive within Hilltop Manor. Yet, the trial court was not willing to implement the express language that gave all the power to Appellants to decide what maintenance was required. The Dilts, as the original owners of the dominant estate, contractually waived any rights to participate in this decision making process by drafting the restrictions. As subsequent purchasers of the dominant estate, the Appellees were also bound by the language contained in the instrument. By finding that the Appellees can maintain the drive in a way that will allow them to move forward with their construction project, the trial court has written into the agreement a portion that does not exist. Such a decision resulted in an abuse of discretion. *See Myers* at ¶ 18, citing *Munchmeyer*,

1996 WL 142579. However, in the event that Appellees somehow retained a right to improve the drive, the trial court still abused its discretion because the overarching burdens inflicted upon the Appellants should have resulted in a finding that the use did not result from a natural development of the land. For these reasons, I would have sustained the Appellants' assignments of error and reversed the judgment of the trial court.

/jlr