[Cite as *Hoover v. Pfeifer*, 2025-Ohio-4909.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## WYANDOT COUNTY

CAMMY JANE NICOLE HOOVER,
ET AL.,

      PLAINTIFFS-APPELLEES,

  v.

DENNIS E. PFEIFER, ET AL.,

      DEFENDANTS-APPELLANTS.

CASE NO. 16-25-06

OPINION AND
JUDGMENT ENTRY

---

Appeal from Wyandot County Common Pleas Court
General Division
Trial Court No. 23-CV-0012

**Judgments Affirmed**

**Date of Decision: October 27, 2025**

---

**APPEARANCES:**

    *Dennis E. Pfeifer* and *Agnes A. Pfeifer*, Appellants

    *Martin D. Koop* for Appellees

**WALDICK, P.J.**

{¶1} Defendants-appellants, Dennis Pfeifer and Agnes Pfeifer ("the Pfeifers" or "appellants"), appeal the judgments of the Wyandot County Court of Common Pleas in which the trial court granted partial summary judgment, declaratory judgment, and a permanent injunction in favor of, and as sought by, plaintiffs-appellees, Cammy Jane Nicole Hoover, Charles Weaver, and Mary Jane Weaver ("plaintiffs" or "appellees"). For the reasons outlined below, we affirm.

*Factual Background and Procedural History*

{¶2} This appeal involves a dispute between the appellees and appellants, who are neighbors, over the use of two easements. The appellants, who are husband and wife, and appellee Hoover own adjacent parcels of land in the Upper Sandusky area. The appellants live in a residence on their property at 10215 State Route 199. Appellee Hoover owns a residence on the adjoining property at 903 North Warpole Street, in which her mother and stepfather, appellees Mary Jane and Charles Weaver, reside as tenants of Hoover. The two abutting properties are subject to three easements, two of which are at issue in this appeal.

{¶3} In December of 1959, the parents of appellee Dennis Pfeifer purchased approximately 155 acres of land in Wyandot County. In 1962, Pfeifer's parents built a house on that land, the address of that house being 10215 State Route 199. Pfeifer's parents also constructed private blacktop roadways to be used for access to and from the house and State Route 199. In 1979, Pfeifer's parents gifted

-2-

him a .866-acre parcel of the land owned by the parents, on which Pfeifer built the house located at 903 North Warpole Street. The .866-acre parcel, and therefore the house at 903 North Warpole Street, has no access to any public road and so the deed to 903 North Warpole Street granted easements for that purpose. After Dennis Pfeifer's parents passed away, Pfeifer and his wife, Agnes, moved from 903 North Warpole Street to the neighboring house at 10215 State Route 199. The real property at 903 North Warpole Street was then sold, and subsequently changed hands several times before it was purchased by appellee Hoover in February of 2021. The deed to Hoover includes descriptions of the two easements at issue here.

{¶4} The language relating to the first easement (the "road easement") provides that "[s]aid parcel also having a non-exclusive easement to use any and all roads surrounding said parcel, or until such time as the roads are dedicated to the City of Upper Sandusky, Ohio." The road easement is silent as to maintenance responsibilities.

{¶5} The language relating to the second easement (the "driveway easement") provides:

> Said parcel is subject to an easement for driveway purposes of egress and ingress on, in and over the following described real estate:
>
> Being a strip of land 25 feet in width next to and running the entire length of the east side of the parcel connecting with a strip of land on each end of said parcel being 25 feet in width and running along the north and south end continuing past said property line to State Route 199, this being the north and south side of said parcel.

{¶6} After appellee Hoover assumed ownership of the property at 903 North Warpole Street and leased the premises to the Weavers, the appellees and the appellants began disputing the utilization of the road easement and the driveway easement. Such tensions increased over time, which resulted in heated disagreements between the parties. The parties, and the Pfeifers in particular, employed a number of self-help measures in an effort to enforce what each side to the dispute perceived as their rights to use the land at issue. The parties also made a number of police reports concerning the actions of the opposing parties and the manner in which the easements were being used.

{¶7} Procedurally, this case originated on January 31, 2023, when Hoover and the Weavers filed a complaint against the Pfeifers in the trial court, seeking monetary damages, declaratory judgment, and injunctive relief. The complaint alleged that Hoover is the titled owner of a .87-acre piece of real property located at 903 North Warpole Street in Upper Sandusky, and that the Weavers reside at and possess that property pursuant to a landlord/tenant relationship with Hoover. The complaint alleged that the Pfeifers are the titled owners of certain real property that surrounds the property owned by Hoover. The complaint asserted that the plaintiffs have a vested interest in an easement across the property owned by the Pfeifers, being the road easement. The complaint further asserted that the property was subject to another easement, being the driveway easement. The complaint alleged that, beginning in February of 2021, the Pfeifers or their agents had obstructed the

plaintiffs' easement rights and denied plaintiffs the use of the easements as originally intended. The complaint then set forth six causes of action against the Pfeifers: Declaratory Judgment and Easement by Prescription (Count One); Easement for the Benefit of Plaintiffs Created by Operation of Law (Count Two); Breach of Easement/Trespass to Easement (Count Three); Request for Preliminary and Permanent Injunction (Count Four); Trespass (Count Five); and Tortious Interference with Contractual Relations (Count Six).

{¶8} On March 20, 2023, the Pfeifers filed a motion to dismiss the complaint pursuant to Civ.R. 12(B)(6). In the alternative, the Pfeifers moved to dismiss the Weavers as parties to the lawsuit due to lack of standing. The Pfeifers argued that the Weavers are not proper parties because they do not own the property in question and are not parties to the easements at issue, and that they lacked standing to bring a claim for tortious interference with contract as the Weavers are not parties or intended third-party beneficiaries to the alleged real estate purchase contract upon which the tortious interference claim was based. On April 7, 2023, the plaintiffs filed a response in opposition to the Pfeifers' motion to dismiss. On July 3, 2023, the trial court filed a judgment entry overruling the motion to dismiss the complaint. In that same judgment entry, with regard to the issue of whether the Weavers had standing, the trial court found that the Weavers had standing to bring the claims asserted in the first five counts of the complaint. The trial court determined that the Weavers lacked standing as to the sixth count of the complaint,

alleging tortious interference with contract, and therefore dismissed the claims of the Weavers with regard to that count.

{¶9} On July 17, 2023, the Pfeifers filed an answer, along with a nine-count counterclaim seeking monetary damages, declaratory judgment, and injunctive relief.

{¶10} On August 7, 2023, the plaintiffs filed a reply to the Pfeifers' counterclaim.

{¶11} On November 1, 2024, both sets of parties filed motions for summary judgment.

{¶12} On January 16, 2025, the trial court filed a judgment entry finding that the plaintiffs' motion for summary judgment was well taken in part, and therefore granted summary judgment in favor of the plaintiffs on the following claims for relief set forth in their complaint: a request for declaratory judgment as to the rights of the parties, a claim of liability for breach of easement and trespass to easement, and a request for injunctive relief. The trial court also granted summary judgment in favor of the plaintiffs as to several of the counterclaims raised by the Pfeifers. The trial court left for trial the issue of whether the plaintiffs had previously failed to properly maintain and repair the private roads over which they had an easement, which was a counterclaim raised by the Pfeifers. On January 16, 2025, by separate judgment entry, the trial court granted summary judgment in favor of the Pfeifers as to the claims of easement by prescription and by operation of law

raised by the plaintiffs, as to one claim of trespass raised by the plaintiffs, and as to the claim of tortious interference with contract raised by plaintiff Hoover.

{¶13} On January 23, 2025, the trial court filed a judgment entry issuing declaratory judgment, primarily in favor of the plaintiffs. On that same date, the trial court also filed a separate judgment entry setting forth the court's reasoning in support of the declaratory judgment. Among other things, the trial court found, as to the road easement, that plaintiff Hoover holds the dominant estate to that non-exclusive easement, with the Pfeifers holding the servient estate, and that the rights of Hoover and the occupants of and visitors to her property at 903 North Warpole Street are more extensive than mere ingress and egress from and to State Route 199, which was the claim made by the Pfeifers. The trial court therefore ordered that the owners, occupants, and visitors of 903 North Warpole Street (1) may ride bicycles, tricycles or other vehicles on the private roadways; (2) may walk between 903 North Warpole Street and State Route 199 on the north, east, and south private roads; (3) may park vehicles on the north and east private roads, but not on the south private road, so long as such parking does not prevent other vehicles from passing across and along those roads; and (4) may use the private roads for recreational purposes, so long as the recreational use does not impair the travel of vehicles or persons on those roads. As to the driveway easement, the trial court found that plaintiff Hoover holds the dominant estate to the driveway easement, and that the Pfeifers hold the servient estate to that easement. Finally, the trial court found that plaintiff Hoover

has a duty to maintain and repair the private roadways along with the Pfeifers. The trial court ordered that such repairs and maintenance shall be done after consultation and agreement of the owners of both properties and that, unless otherwise agreed, the cost of maintenance and repairs of the private roads shall be divided equally between the owners of 903 North Warpole Street and 10215 State Route 199.

{¶14} On January 31, 2025, the trial court issued a preliminary injunction, pursuant to which the Pfeifers were ordered: (1) not to install any speed bumps on the road easement; (2) to remove all speed bumps they had previously installed on the road easement, and to repair to all damages resulting to the roads from the speed bump installation; (3) to remove fence posts, fencing, and stakes they had placed within the driveway easement; (4) not to block or impede the entrance to the concrete driveway going from 903 North Warpole Street to the east private road; (5) not to impede the owners, occupants, and visitors of 903 North Warpole Street from parking on the north and east private roads, so long as the vehicles parked do not impede driving on the roads; (6) not to impede the owners, occupants, and visitors of 903 North Warpole Street from walking on the road easement to access State Route 199; (7) not to impede the owners, occupants, and visitors of 903 North Warpole Street from using the private roads for recreational purposes, so long as the recreational use is not impairing the travel of vehicles or persons on those roads; (8) not to impede the owners, occupants, and visitors of 903 North Warpole Street from trimming tree branches or other vegetation within the driveway easement that cause

a risk of harm to vehicles using the north, east, and south private roads; and (9) not to impede the owners, occupants, and visitors of 903 North Warpole Street from mowing the grass, raking leaves, or removing yard waste from the driveway easement.

{¶15} On February 18, 19, 20, 21, 24, 25, 26, 27, and 28, and March 3, 5, 6, 10, and 12, 2025, a trial to the court was held on all issues not resolved by summary judgment. During the trial, on March 6, 2025, the plaintiffs filed a motion to amend the pleadings to conform to the evidence.

{¶16} On March 14, 2025, the trial court filed a final judgment entry that included the following orders: The trial court granted the plaintiffs' motion to amend the pleadings to conform to the evidence. The trial court denied all other pending motions, which included a motion to strike with sanctions filed by the Pfeifers on December 26, 2024, a motion to strike with sanctions filed by the Pfeifers on February 5, 2025, and a motion for contempt filed by the Pfeifers on March 10, 2025. The Pfeifers were also granted monetary judgments on Counts One and Four of their counterclaim.

{¶17} In the March 14, 2025 final judgment entry, the trial court further granted the plaintiffs a permanent injunction, pursuant to which the Pfeifers and anyone acting on their behalf were ordered: (1) not to install any speed bumps on the road easement; (2) to remove all speed bumps they had previously installed on the road easement, and to repair all damages resulting to the roads from the speed

bump installation; (3) to remove fence posts, fencing, and stakes they had placed within the driveway easement; (4) not to park any vehicles within 20 feet from the entrance to the concrete driveway of 903 North Warpole Street; (5) not to impede the owners, occupants, and visitors of 903 North Warpole Street from parking on the north and east private roads, so long as the vehicles parked do not impede driving on the roads; (6) not to impede the owners, occupants, and visitors of 903 North Warpole Street from walking on the road easement to access State Route 199; (7) not to impede the owners, occupants, and visitors of 903 North Warpole Street from using the private roads for recreational purposes, so long as the recreational use is not impairing the travel of vehicles or persons on those roads; (8) not to impede the owners, occupants, and visitors of 903 North Warpole Street from trimming tree branches or other vegetation within the driveway easement that cause a risk of harm to vehicles using the north, east, and south private roads; and (9) not to impede the owners, occupants, and visitors of 903 North Warpole Street from mowing the grass, raking leaves, or removing yard waste from the driveway easement.

{¶18} On March 24, 2025, the plaintiffs filed a motion requesting clarification and modification of the March 14, 2025 judgment entry, in order to conform with the orders of the trial court made from the bench in open court at the conclusion of the trial.

**{¶19}** On April 9, 2025, the trial court filed a judgment entry/order clarifying its March 14, 2025 judgment entry.

**{¶20}** On that same date of April 9, 2025, the Pfeifers filed a notice of appeal, indicating they were appealing the March 14, 2025 judgment of the trial court. On April 11, 2025, the Pfeifers filed an amended notice of appeal, giving notice that they were appealing (1) the trial court's July 3, 2023 judgment that overruled the Pfeifers' motion regarding standing; (2) the trial court's declaratory judgment entry filed on January 23, 2025; and (3) the judgment entered by the trial court on March 14, 2025.

*Assignments of Error*

**{¶21}** On appeal, the Pfeifers raise the following nine assignments of error for this Court's consideration.

**First Assignment of Error**

**The trial court erred in determining that the Appellees are the dominant owners of the 25-foot-wide driveway easement while the Appellants are the servient owners and that Appellants committed a trespass thereon.**

**Second Assignment of Error**

**The trial court erred in not striking the survey of Nick Nigh.**

**Third Assignment of Error**

**The trial court erred in granting Appellees's motion to amend the pleadings to conform to the evidence.**

**Fourth Assignment of Error**

**The trial court erred in determining the Appellees have a right to use the Driveway Easement for recreational purposes and to mow the grass, rake leaves, and remove yard waste from the Driveway Easement.**

**Fifth Assignment of Error**

**The trial court erred in determining that Appellees have a right to park on the road easement, walk on the road easement, and use the Road Easement for recreational purposes.**

**Sixth Assignment of Error**

**The trial court erred in determining how the parties would divide the costs for maintenance of the road easement and that Repairs take the Consent of the Parties.**

**Seventh Assignment of Error**

**The trial court erred in determining that Plaintiffs Charles Weaver and Mary Weaver had standing on Counts 1-4 of their complaint.**

**Eighth Assignment of Error**

**The trial court erred in determining that Appellants committed a Trespass by placing speed bumps on the Road Easement.**

**Ninth Assignment of Error**

**The trial court erred by dismissing motions without a hearing.**

*First Assignment of Error*

{¶22} In the first assignment of error, the Pfeifers argue that the trial court erred in determining that appellee Hoover is the dominant owner of the 25-foot-

wide driveway easement and that the Pfeifers are the servient owners of that easement.

{¶23} In the "Reasoning Supporting Declaratory Judgment" filed by the trial court on January 23, 2025, the trial court set forth an extensive analysis in support of the declaratory judgment granted that same date by separate judgment entry, in which the trial court found that Hoover is the dominant owner of the driveway easement and that the Pfeifers are the servient owners.

{¶24} On appeal, the Pfeifers argue that they hold the dominant estate in the driveway easement for the same reasons they asserted in the trial court: (1) the language relating to the easement in the deed to 903 North Warpole Street states that "[s]aid parcel is *subject to* an easement for driveway purposes of egress and ingress * * * " (emphasis added), as well as the fact that such language was quoted in the complaint herein, which the Pfeifers deem an admission; and (2) their contention that the purpose of the driveway easement was to create a setback on the property at 903 North Warpole Street.

{¶25} "A declaratory judgment action provides a means by which parties can eliminate uncertainty regarding their legal rights and obligations." *Mid-American Fire and Casualty Co. v. Heasley*, 2007-Ohio-1248, ¶ 8, citing *Travelers Indemn. Co. v. Cochrane*, 155 Ohio St. 305, 312 (1951). *See also* R.C. 2721.03.

{¶26} "[A]n appellate court reviewing a declaratory-judgment matter should apply an abuse-of-discretion standard in regard to the trial court's holding

concerning the appropriateness of the case for declaratory judgment, i.e., the matter's justiciability, and should apply a de novo standard of review in regard to the trial court's determination of legal issues in the case." *Arnott v. Arnott*, 2012-Ohio-3208, ¶ 1.

{¶27} We note that appellate courts also conduct a de novo review of trial court decisions granting a motion for summary judgment. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105 (1996). Thus, this Court must conduct an independent review of the evidence and arguments that were before the trial court without deference to the trial court's decision. *Tharp v. Whirlpool Corp.*, 2018-Ohio-1344, ¶ 23 (3d Dist.).

{¶28} Lastly as to the standard of review applicable here, as this Court noted in a prior decision involving an easement dispute, "[t]he construction of an instrument of conveyance is a question of law and is thus reviewed using a de novo standard of review." *Goralske v. Parsell*, 2016-Ohio-531, ¶ 10 (3d Dist.), citing *Walbridge v. Carroll*, 2007-Ohio-3586, ¶ 16 (6th Dist.).

{¶29} An easement is defined as a nonpossessory property interest in the land of another, which entitles its owner to make a limited use of the servient property. *Pomante v. Marathon Ashland Pipe Line L.L.C.*, 2010-Ohio-1823, ¶ 7, citing *Andrews v. Columbia Gas Transm. Corp.*, 544 F.3d 618, 624 (6th Cir. 2008), citing *Alban v. R.K. Co*. 15 Ohio St.2d. 229, 231 (1968). An easement can be created in one of four ways: "by grant, implication, prescription, or estoppel." *Kamenar R.R.*

*Salvage, Inc. v. Ohio Edison Co.*, 79 Ohio App.3d 685, 689 (3d Dist. 1992), citing 36 Ohio Jurisprudence 3d (1982), Easements and Licenses, Section 18. The owner of the easement is referred to as the "dominant estate" and the land in which the interest exists is called the "servient estate." *Myers v. McCoy*, 2005-Ohio-2171, ¶ 16 (5th Dist.), citing *Alban v. R.K. Co.*, *supra*.

{¶30} "Easements are divided into two classes: easements appurtenant and easements in gross." *Goralske*, *supra*, at ¶ 11. "'An easement appurtenant requires a dominant tenement to which the benefit of the easement attaches or "appertains" and a servient tenement upon which the obligation or burden rests.'" *Id*., quoting *Lone Star Steakhouse & Saloon of Ohio, Inc. v. Ryska,* 2005-Ohio-3398, ¶ 24 (11th Dist.). "Easements appurtenant" run with the land and thus transfer with the property as long as a record of the easement appears in the chain of title of the dominant property. *Id*., citing *Pence v. Darst,* 62 Ohio App.3d 32 (2d Dist.1989).

{¶31} The easement at issue here is an express easement created by grant in the deed to the real property at 903 North Warpole Street, and which runs with that land. "No specific words are required to create an easement by express grant as long as the intent of the parties is clear from the document." *Goralske*, *supra*, at ¶ 14, citing *Cincinnati Entertainment Assoc. v. Bd. of Commissioners,* 141 Ohio App.3d 803 (1st Dist. 2001).

{¶32} When the terms of an easement "are clear and unambiguous, the construction of an express easement presents an issue of law." *Pomante*, *supra*, at ¶

7, citing *Alexander v. Buckeye Pipe Line Co.*, 53 Ohio St.2d 241, paragraph one of the syllabus (1978). "When interpreting the terms of a written easement, the court must follow the ordinary rules of contract construction so as to carry out the intent of the parties as demonstrated by the language in the contract." *Hemmelgarn v. Huelskamp & Sons, Inc.*, 2019-Ohio-5298, ¶ 12 (3d Dist.). "However, if there is no specific delineation of the easement, or if the document is ambiguous, then the court must look to the surrounding circumstances in order to determine the intent of the parties." *Hemmelgarn*, at ¶ 13, citing *Murray v. Lyon*, 95 Ohio App.3d 215, 219 (9th Dist. 1994). "The language of the easement, coupled with the surrounding circumstances, is the best indication of the extent and limitations of the easement." *Id.*, citing *Apel v. Katz*, 83 Ohio St.3d 11, 17 (1998).

{¶33} "An easement 'is ambiguous if it is "susceptible to more than one reasonable interpretation."'" *Columbia Gas v. Bailey*, 2023-Ohio-1245, ¶ 95 (3d Dist.), quoting *Westlake v. VWS, Inc.*, 2014-Ohio-1833, ¶ 34 (8th Dist.), quoting *Michael A. Gerard, Inc. v. Haffke*, 2013-Ohio-168, ¶ 11 (8th Dist.). "Because the intent of the parties becomes a question of fact when a court finds an ambiguity in the easement language, the trier of fact may rely on extrinsic evidence to ascertain such intent. *Id.*, citing *Mulchin v. ZZZ Anesthesia, Inc.*, 2006-Ohio-5773, ¶ 36 (6th Dist.).

{¶34} In the instant case, the trial court's analysis regarding the driveway easement reads as follows:

## THE LANGUAGE USED IN THE DRIVEWAY EASEMENT IS AMBIGUOUS.

The Driveway Easement states:

"Said parcel is subject to an easement for driveway purposes of egress and ingress on, in and over the following described real estate:

Being a strip of land 25 feet in width next to and running the entire length of the East side of the parcel connecting with a strip of land on each end of said parcel being 25 feet in width and running along the North and South and continuing past said property line to State Route 199, this being the North and South side of said parcel."

The Driveway Easement does not explicitly state who is the grantor of the easement, nor to whom the easement is in favor. This is a problem, because the Driveway Easement is written so ambiguously that both Plaintiff Cammy Hoover and the Defendants are making good-faith claims that they possess the dominant estate of the Driveway Easement, while the other side holds the servient estate.

## THE REASON SUPPORTING THE DEFENDANTS' CLAIM THEY HOLD THE DOMINANT ESTATE OF THE DRIVEWAY EASEMENT

The Driveway Easement in the Deed received by Plaintiff Cammy Hoover Begins: **Said parcel is subject to an easement** for driveway purposes of egress and ingress … (emphasis supplied.)

There is no question that the parcel referred to in the Driveway Easement is the 903 North Warpole Property. As a result, the Defendants quite reasonably argue that they hold the dominant estate in the Driveway Easement and that they have a 25-foot easement for driveway purposes on the Hoover property.

## THE REASONS SUPPORTING PLAINTIFF HOOVER'S CLAIM THAT SHE HOLDS THE DOMINANT ESTATE OF THE DRIVEWAY EASTMENT

**Reason 1: The Legal Description of the Driveway Easement Places It Next To The 903 Warpole Street Property**

The legal description of the Driveway Easement begins with: ["]Being a strip of land 25 feet in width **next to** and running the entire length of the east side of the parcel …" (Emphasis supplied.). The Plaintiffs correctly point out that the parcel cannot be subject to an easement that is located next to the parcel.

**Reason 2:  The Driveway Easement Description Runs Past the Property Line To State Route 199.  The 903 North Warpole Street Property Cannot Be Subject To An Easement Located Outside Of It.**

As stated before, an easement has been defined as an interest **in the land of another** created by prescription or express or implied grant, which entitles the owner of the easement to a limited use of the land in which the interest exists. (Emphasis supplied.)

The legal description of the Driveway Easement states that it goes beyond the property line (of 903 North Walpole [*sic*] Street) to State Route 199.  An easement cannot be created in favor of the owners of 10215 State Route 199, on land that is already owned by the owners of 10215 State Route 199, because said owners already have full ownership of where the easement would supposedly go.

The legal description of the Driveway Easement only makes sense if the Driveway Easement is located on 10215 State Route 199, with Plaintiff Hoover holding the dominant estate, and the Defendants holding the servient estate, of the Driveway Easement.

**Reason 3:  The Owner of 903 North Warpole Street Must Be Holder of The Dominant Estate Of The Driveway Easement; Otherwise 903 North Warpole Street Would Be Landlocked and Without Access To The Private Roads Without Having To Pass Through Land Controlled Exclusively By the Defendants.**

According to the survey prepared by surveyor Nick E. Nigh, if the Driveway Easement is not located on the land of 10215 State Route 199, with the owner of 903 North Warpole Street being the holder of the dominant estate, then 903 North Warpole Street would be landlocked, since that property is not connected to any of the private roads.

The Court understands that the Defendants state that the problem is resolved because of the concrete driveway that was built with the consent of Defendant Dennis Pfeifer's parents; however, the resolution of the problem cannot be certain unless it is determined that Plaintiff Hoover holds the dominant estate in the Driveway Easement.

**Reason 4:  As The Original Creation Of The 903 North Warpole Street Property Was A Gift From Defendant Dennis Pfeifer's Parents To Dennis Pfeifer, The Only Reasonable Reading Of The Driveway Easement Is To Find That Owner Of 903 North Warpole Holds The Dominant Estate Of The Driveway Easement.**

It must be remembered that the original transaction which created the 903 North Warpole Street property in 1979 was a gift transaction from Defendant Dennis Pfeifer's parents to Defendant Dennis Pfeifer.

It would make no sense whatsoever for the parents of Defendant Dennis Pfeifer to gift real estate to Defendant Dennis Pfeifer without providing him a way to access the private roads which he had been granted the use of elsewhere in the deed.

Given that the original transaction was a gift to Defendant Dennis Pfeifer from his parents, the only reasonable conclusion is that what was intended was a Driveway Easement in favor of the owners of 903 North Warpole Street so that persons on the property could reach the private roads surrounding it.

**Reason 5:  There Is No Evidence That The Owners of 10215 State Route 199 Have Ever Used Their Supposed Driveway Easement on 903 North Warpole Street.**

Given the hundreds of videos that have been submitted to the Court in this case, there is no evidence that the Defendants have ever used any easement for driveway purposes located on the 903 North Warpole Street Property.

**Reason 6:  Defendant Dennis Pfeifer's Explanation That The Purpose of The Driveway Easement Was To Create A Setback on 903 North Warpole Is Not In Conformity With The Express Intention That The Easement Is For Driveway Purposes.**

Defendant Dennis Pfeifer, in his second Affidavit, explained that the purpose of the Driveway Easement on 903 North Warpole Street was to create a setback requirement for said property, and that he built his house more than 25 feet away from the boundary of 903 North Warpole Street to conform with that setback.

Assuming this is true, this is of no benefit to the Defendants, because the driveway easement makes no mention of creating a setback on the 903 North Warpole Street Property, and a setback is not a purpose of a driveway easement. To convert an easement for driveway purposes into a setback requirement would be contrary to the plain language of the Driveway Easement, and would require the Court to find a new term to the easement by finding an intent not expressed in the language used, which this Court is not permitted to do, Delaware Golf Club v. Dornoch Estates Homeowners Association, [2020-Ohio-880 (5th Dist.)], at Paragraph 42.

**Reason 7: The Language Contained In The Driveway Easement In The Deed for 899 North Warpole Demonstrates How The Driveway Easement Works.**

A year before the parents of Defendant Dennis Pfeifer gifted the 903 North Warpole Street Property to Defendant Dennis Pfeifer in 1979, they sold the [neighboring] 899 North Warpole Street Property to George Preston.

The 899 North Warpole Street Property description also contained an easement for driveway purposes. Unlike The Driveway Easement grant in the 903 North Warpole Street Deed, the 899 North Warpole Street Property Deed expressly states that the grantors (the 10215 State Route 199 owners) granted to the grantee (the 899 North Warpole Street owner) a non-exclusive easement for driveway purposes of ingress and egress. Like the 903 North Warpole Street Deed, the 899 North Warpole Street Driveway Easement was located next to the property being transferred, and the easement reached the private road located next to the property (the South Private Road), in the 899 North Warpole Deed. Likewise, the Driveway Easement in the 903 North Warpole Street Deed reaches the North, East and South Private Roads.

It appears that the purpose of the Driveway Easement in the Deed to Plaintiff Hoover was to enable persons at 903 North Warpole Street

-20-

to access the North, East and South Private Roads surrounding the property.

## THE STANDARDS FOR CONSTRUING AMBIGUOUS EASEMENTS

If there is no specific delineation of the easement, or if the document is ambiguous, the court must then look to the circumstances surrounding the transaction in order to determine the intent of the parties. The language of the easement, coupled with the surrounding circumstances, is the best indication of the extent and limitations of the easement, Delaware Golf Club v. Dornoch Estates Homeowners Association, supra, at Paragraph 41.

It is, of course, the general rule in the construction of deeds, that in case of ambiguity the instrument must be construed most strongly against the grantor and in favor of the grantee. 2 Tiffany on Real Property (2d Ed.), Section 437:

"The courts, in connection with the construction of written conveyances, as of other instruments, have asserted some general rules of construction, to aid in ascertaining the intention of the parties thereto.

"In case of doubt, it is said, the conveyance is to be construed most strongly as against the grantor, or in favor of the grantee on the theory, it seems, that the words used are to be regarded as the words of the grantor rather than of the grantee. Applying this rule, an exception or reservation in a conveyance is construed in favor of the grantee rather than of the grantor."

Pure Oil Co. v. Kindall, 116 Ohio St. 188 (1927); see also, Galambos v. Estep, 2016-Ohio-5615 (Tuscawaras App.), at Paragraph 15; Mid-Ohio Coal Co. v. Brown, 2018-Ohio-1934 (Guernsey App.), at Paragraph 13; and Blile v. Staley, 2017-Ohio-9405 (Harrison App.), at Paragraph 21.

## THE DRIVEWAY EASEMENT IS AN EASEMENT WITH THE OWNER OF THE 903 NORTH WARPOLE PROPERTY HOLDING THE DOMINANT ESTATE AND THE OWNERS OF THE 10215 STATE ROUTE 199 PROPERTY HOLDING THE SERVIENT ESTATE.

As the wording of the Driveway Easement is ambiguous, the Court finds the language of the Driveway Easement is to be construed most strongly against the Grantors of the original deed in 1978, and their successors, the owners of 10215 State Route 199, and in favor of the Grantee of the same original deed and his successors, the owner of 903 North Warpole Street.

The language of the Driveway Easement will be construed most strongly against the Defendants, as the Defendants are the owners of 10215 State Route 199, and in favor of Plaintiff Hoover, as she is the owner of 903 North Warpole Street.

After weighing the factor or factors supporting the claims of each side, and after construing the language of the Driveway Easement most strongly against the Defendants, the Court finds that Plaintiff Hoover, as the owner of 903 North Warpole, holds the Dominant Estate in the Driveway Easement, and that the Defendants Dennis Pfeifer and Agnes Pfeifer, hold the Servient Estate in the Driveway Easement.

(1/23/25 Reasons Supporting Declaratory Judgment, Docket No. 89).

{¶35} This Court's de novo review of the trial court's extensive analysis and declaration of rights relating to the driveway easement, combined with a consideration of all applicable law, leads us to conclude that the trial court appropriately analyzed and resolved the relevant issues pertaining to the ownership of the driveway easement in its "Reasons Supporting Declaratory Judgment", issued on January 23, 2025.

{¶36} The first assignment of error is overruled.

*Second Assignment of Error*

{¶37} In the second assignment of error, the Pfeifers argue that the trial court erred in not striking a survey map that was attached to an affidavit of plaintiff Mary

Jane Weaver filed in support of the plaintiffs-appellees' position on the summary judgment motions pending before the trial court at that time.

{¶38} With regard to this issue, the record reflects that on November 1, 2024, both sets of parties filed motions for summary judgment. On December 2, 2024, the plaintiffs filed a reply brief in response to the Pfeifers' memorandum in opposition to the plaintiffs' motion for summary judgment. Submitted with that December 2, 2024 reply brief filed by the plaintiffs was the affidavit of plaintiff Mary Jane Weaver, and attached to the affidavit were two maps: one being a map provided by the Pfeifers in discovery and the second being "a folded map prepared by Nick Nigh for Oxley Law Office[.]" (Docket No. 75, Exhibit 1). With regard to the maps attached to Weaver's affidavit, the reply brief states, "[t]hese maps are instructive about the easement and may prove useful to the Court's analysis" and Weaver's affidavit avers that "the folded map is a true and accurate reproduction of the map as it was prepared by Nick E. Nigh." (*Id.*).

{¶39} On December 26, 2024, the Pfeifers filed a motion to strike numerous portions of various affidavits filed by the plaintiffs. In that motion, the Pfeifers asserted, among other things, that "Paragraph 38 [of the affidavit of Mary Jane Weaver] and its referenced Exhibit are a blatant attempt by Ms. Weaver to introduce expert opinion and testimony of a third-party expert who has not testified or been deposed in this matter. Ms. Weaver cannot authenticate the Exhibit or its contents,

and therefore this paragraph and its Exhibit should be stricken." (Docket No. 78, p. 13).

{¶40} On January 16, 2025, the trial court filed a judgment entry finding that the plaintiffs' motion for summary judgment was well taken in part, and therefore granted summary judgment in favor of the plaintiffs on several claims for relief set forth in their complaint, including the request for declaratory judgment as to the rights of the parties relating to the easements at issue.

{¶41} On January 23, 2025, the trial court filed a judgment entry issuing declaratory judgment, primarily in favor of the plaintiffs. On that same date, the trial court also filed a separate judgment entry setting forth the court's reasoning in support of the declaratory judgment, in which the court twice references the Nick Nigh survey. On appeal, the Pfeifers assert that the trial court's consideration of the Nigh survey constitutes reversible error. We disagree.

{¶42} "An appellate court reviews a trial court's decision on the admissibility of evidence, including affidavits submitted to support or oppose summary judgment, for an abuse of discretion." *In re Estate of Beatley v. Fisher*, 2024-Ohio-5109, ¶ 45 (10th Dist.), citing *Cashlink, L.L.C. v. Mosin, Inc.*, 2012-Ohio-5906, ¶ 9 (10th Dist.). An abuse of discretion connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

{¶43} Civ.R. 56(C) limits the materials a trial court may consider when deciding a motion for summary judgment to pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action. *State ex rel. Bradford v. Bowen*, 2022-Ohio-351, ¶ 9; Civ.R. 56(C) ("No evidence or stipulation may be considered except as stated in this rule."). Any evidentiary matter not specifically authorized by Civ.R. 56(C) must be incorporated by reference in a properly framed affidavit. *State ex rel. Parker v. Russo*, 2019-Ohio-4420, ¶ 10. *See also* Civ.R. 56(E) ("Sworn or certified copies of all papers or parts of papers referred to in an affidavit shall be attached to or served with the affidavit."). The Civ.R. 56(E) requirement is satisfied by attaching the papers to the affidavit, "coupled with a statement therein that such copies are true copies and reproductions." *State ex rel. Corrigan v. Seminatore*, 66 Ohio St.2d 459, 467 (1981).

{¶44} In the instant case, while the affidavit of Mary Jane Weaver was facially compliant with Civ.R. 56(E), in terms of stating that the map at issue was a true and accurate reproduction of the map prepared by Nick Nigh, this Court agrees with the Pfeifers' assertion on appeal that the affidavit lacks any indication that Weaver was personally able to authenticate the map or its contents. Accordingly, the map may not have been properly before the trial court.

{¶45} However, our review of the 15-page "Reasoning Supporting Declaratory Judgment" filed by the trial court on January 23, 2025 reveals that,

while the trial court does twice reference the survey map about which the Pfeifers complain on appeal, those references reflect that the trial court's consideration of that map was very narrow in scope. More importantly, that map was merely one of many factors considered by the trial court in its decision, and nothing indicates that the trial court's limited consideration of the survey map was outcome determinative. We further note that the survey map with which the Pfeifers assign error was not materially inconsistent with the various maps and diagrams of the real property at issue that the Pfeifers themselves filed with the trial court in support of their position in the case. Accordingly, as the Pfeifers have not demonstrated that they were prejudiced by the trial court's failure to strike the map at issue, we find that any error in the trial court's consideration of the map was harmless. *See Citibank v. McGee*, 2012-Ohio-5364, ¶ 20 (7th Dist.) (determining that a trial court's failure to strike an improper exhibit attached to a motion for summary judgment was harmless because it was not necessary to prove the appellee's case on summary judgment).

{¶46} The second assignment of error is overruled.

*Third Assignment of Error*

{¶47} In the third assignment of error, the Pfeifers assert that the trial court erred in granting the plaintiffs-appellees' motion to amend the pleadings to conform to the evidence adduced during the trial held in the case.

{¶48} With respect to this assignment of error, the record reflects that, on multiple dates between February 18, 2025 and March 12, 2025, a trial to the court

was held on all issues not resolved by summary judgment. During the course of the trial, on March 6, 2025, the plaintiffs filed a motion to amend the pleadings to conform to the evidence.

**{¶49}** On March 14, 2025, after the trial was concluded, the trial court filed a "Final Judgment Entry" in which, among other things, the trial court granted the plaintiffs' motion to amend the pleadings to conform to the evidence.

Civ.R. 15(B) provides, in relevant part:

When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment.

**{¶50}** The standard of review on appeal as to Civ.R. 15(B) matters is abuse of discretion. *Sturgill v. Worcester*, 2002-Ohio-2104, ¶ 16 (3d Dist.). In undertaking such a review, we must be mindful "of the rule's mandate that courts shall freely allow the amendment of pleadings 'when the presentation of the merits of the action will be subserved thereby and the objecting party fails to satisfy the court that the admission of such evidence would prejudice him in maintaining his action or defense upon the merits.'" *Id.*, quoting Civ.R. 15(B).

**{¶51}** However, in reviewing the error assigned here, we are confined to the record that was before the trial court as defined in App.R. 9(A). *Black v. St. Marys Police Dep't*, 2011-Ohio-6697, ¶ 11 (3d Dist.). "The appellant bears the burden of demonstrating error by reference to the record of the trial court proceedings, and it

is the appellant's duty to provide the reviewing court with an adequate transcript." *Id*., citing *Knapp v. Edwards Laboratories*, 61 Ohio St.2d 197, 199 (1980). *See also* App.R. 9(B).

**{¶52}** "'When portions of the transcript necessary for resolution of assigned errors are omitted from the record, the reviewing court has nothing to pass upon and thus, as to those assigned errors, the court has no choice but to presume the validity of the lower court's proceedings, and affirm.'" *Black*, *supra*, at ¶ 12, quoting *Knapp* at 199. "Thus, we are limited in our review of these issues and must presume the regularity of the trial court proceedings in the absence of evidence to the contrary." *Id*., citing *Burrell v. Kassicieh,* 128 Ohio App.3d 226, 232 (1998).

**{¶53}** In the instant case, the Pfeifers failed to include a transcript of the trial proceedings in the record on appeal. A transcript of the trial is necessary for our review of the claim that the trial court abused its discretion in granting the plaintiffs' motion made pursuant to Civ.R. 15(B). In the absence of a transcript of the trial upon which the trial court based its Civ.R. 15(B) ruling, we have no choice but to presume the regularity of the proceedings and the trial court's ruling.

The third assignment of error is overruled.

*Fourth Assignment of Error*

**{¶54}** In the fourth assignment of error, the Pfeifers argue that the trial court erred in ordering that the appellees have the right to mow the grass, rake leaves, and remove yard waste on the driveway easement, and to use that easement for recreational purposes.

**{¶55}** As noted above, easements may be created by grant, implication, prescription, or estoppel. *Kamenar R.R. Salvage, Inc. v. Ohio Edison Co.*, 79 Ohio App.3d 685, 689 (3d Dist. 1992), citing 36 Ohio Jurisprudence 3d (1982), Easements and Licenses, Section 18. "When an easement is created by express grant, the extent and limitations of the easement depend upon the language of the grant." *Pomante v. Marathon Ashland Pipe Line L.L.C.*, 2010-Ohio-1823, ¶ 7 (10th Dist.), citing *Alban v. R.K. Co.*, 15 Ohio St.2d 229, 232 (1968). *Accord State ex rel. Wasserman v. Fremont*, 2014-Ohio-2962, ¶ 28.

**{¶56}** "Once an easement has been established, the owner of the dominant estate does not have the authority to do anything desired with the property as it does not belong to the dominant estate, the owner of the dominant estate merely has a right of use." *Goralske v. Parsell*, 2016-Ohio-531, ¶ 13 (3d Dist.). However, "[t]he grant of an easement includes the grant of all things necessary for the dominant estate to use and enjoy the easement." *Myers v. McCoy,* 2005-Ohio-2171, ¶ 17 (5th Dist), citing *Day, Williams & Company v. RR. Company*, 41 Ohio St. 392 (1884). "Thus, in determining the nature and extent of an easement, the court must

-29-

construe the easement in a manner permitting the dominant estate to carry out its purpose." *Id.*, citing *Alban, supra*.

**{¶57}** When interpreting the terms of a written easement, the court must follow the ordinary rules of contract construction so as to carry out the intent of the parties as reflected by the language of the contract. *Hemmelgarn v. Huelskamp & Sons, Inc.*, 2019-Ohio-5298, ¶ 12 (3d Dist). If the question is the scope of an easement, the court must look to the language of the easement to determine the extent of permissible use. *Id.* "When the terms of an easement are clear and unambiguous, a court cannot create new terms by finding an intent not expressed in the language used." *Id.*, citing *Alexander v. Buckeye Pipe Line Co.*, 53 Ohio St.3d 241, 246 (1978). If there is no specific delineation of the easement in the instrument, or if the delineation is ambiguous, then a court may look to other circumstances to ascertain the intent of the parties or fashion a reasonable interpretation of the easement. *Columbia Gas Transm. Corp. v. Bennett*, 71 Ohio App.3d 307, 318 (2d Dist. 1990).

**{¶58}** The construction of an express easement presents an issue of law, to which we apply a de novo standard of review. *Columbia Gas v. Bailey*, 2023-Ohio-1245, ¶ 94 (3d Dist.).

**{¶59}** In this case, as has previously been noted, the language granting the driveway easement provides:

Said parcel is subject to an easement for driveway purposes of egress and ingress on, in and over the following described real estate:

Being a strip of land 25 feet in width next to and running the entire length of the east side of the parcel connecting with a strip of land on each end of said parcel being 25 feet in width and running along the north and south end continuing past said property line to State Route 199, this being the north and south side of said parcel.

{¶60} Thus, the scope of permissible use for the easement at issue in this assignment of error is "driveway purposes of egress and ingress on, in and over" the real property that is subject to the easement. The grant is silent with respect to any prohibited activities but, pursuant to the legal authority cited above, the appellees' use of the driveway easement includes those things necessary to use and enjoy the easement for the specified purpose, which is ingress and egress. For that reason, we conclude that the trial court did not err in holding that the appellees can mow the grass, rake leaves, and remove yard waste on that easement, as those activities may be reasonably necessary to keep and maintain the easement in a condition that facilitates ingress and egress, and their right to enjoy the easement for that specified purpose.

{¶61} In this assignment of error, the Pfeifers further argue that the trial court impermissibly expanded the appellees' use of the easement from "ingress and egress" as stated in the conveyance to use that includes recreational purposes. We find this claim to lack merit, primarily because the Pfeifers do not identify where in the record the trial court made such an order and, moreover, our scrutiny of the record does not reflect that an order concerning recreational activities was actually

made with respect to the driveway easement. Accordingly, we decline to further address this aspect of the Pfeifers' claim. *See* App.R. 12(A)(2).

**{¶62}** The fourth assignment of error is overruled.

*Fifth Assignment of Error*

**{¶63}** In the fifth assignment of error, the Pfeifers argue that the trial court erred in ordering that the appellees have a right to park on the road easement, walk on the road easement, and use the road easement for recreational purposes.

**{¶64}** As noted above, on January 23, 2025, the trial court filed a judgment entry issuing declaratory judgment primarily in favor of the appellees. In that judgment, with regard to the road easement, the trial court found as follows:

> The second easement grants the 903 North Warpole Property a non-exclusive easement to use any and all roads surrounding the 903 North Warpole Property or until such time as the roads are dedicated to the City of Upper Sandusky, Ohio. The Court will refer to this easement [*sic*] the "Road Easement."
>
> The Road Easement is an easement with the owner of the 903 North Warpole Street Property holding the dominant estate to the Easement and the owners of the 10215 State Route 199 Property holding the servient estate to the Easement.
>
> The rights of the owners, occupants and visitors of 903 North Warpole Street under the Road Easement are more extensive than mere ingress and egress to and from State Route 199.
>
>> The owners, occupants and visitors of 903 North Warpole Street may ride bicycles, tricycles or other vehicles on the private roads.
>>
>> The owners, occupants and visitors of 903 North Warpole Street may walk to or from the 903 North Warpole Property

> to or from state [*sic*] Route 199 on the North, East and South Private Roads.
>
> The owners, occupants and visitors of 903 North Warpole Street may park vehicles, such that the parking allows other vehicles on the private road to transit, on the North Private Road and the East Private Road, but not on the South Private Road.
>
> The owners, occupants and visitors of 903 North Warpole Street may use the private roads for recreational purposes, so long as such recreational use does not impair the travel of vehicles or persons on the private roads.

(1/23/25 Declaratory Judgment Entry, Docket No. 88).

{¶65} On appeal, the Pfeifers maintain – as they did in the trial court – that the appellees' utilization of the road easement should be strictly restricted to using it for ingress and egress.

{¶66} As previously set forth, the language in the deed relating to 903 North Warpole Street that grants the road easement provides:

> Said parcel also having a non-exclusive easement to use any and all roads surrounding said parcel, or until such time as the roads are dedicated to the City of Upper Sandusky, Ohio.

{¶67} Again, the scope of an express easement must be determined from the plain language that created it. *Corder v. Ohio Edison Co.*, 2020-Ohio-5220, ¶ 25, citing *State ex rel. Wasserman v. Fremont*, 2014-Ohio-2692, ¶ 28. As noted above, "[w]hen the terms of an easement are clear and unambiguous, a court cannot create new terms by finding an intent not expressed in the language used. *Hemmelgarn v. Huelskamp & Sons, Inc.*, 2019-Ohio-5298, ¶ 12, citing *Alexander v. Buckeye Pipe*

-33-

*Line Co.*, 53 Ohio St.2d 241, 246 (1978). Only if there is no specific delineation of the easement, or if the document is ambiguous, must a court look to the surrounding circumstances in order to determine the intent of the parties. *Hemmelgarn*, at ¶ 13, citing *Murray v. Lyon*, 95 Ohio App.3d 215, 219 (9th Dist. 1994).

{¶68} "The holder of an easement is entitled to a use that is reasonably necessary and consistent with the purposes for which the easement was granted, and must impose the least possible burden upon the property." *Archer v. Engstrom*, 2009-Ohio-2479, ¶ 16 (5th Dist.), citing Thompson on Real Property, *Easements* § 426. "The holder of the fee may do anything not inconsistent with the enjoyment of the easement[.]" *Id.*, citing *Langhorst v. Riethmiller*, 52 Ohio App.2d 137 (1977). "The holder of an easement may use it for any normal use which is not forbidden by law or unreasonably interfering with the rights of the landowner." *Id.*, citing Thompson*, supra,* § 427.

{¶69} Common words appearing in a conveyance will be given their ordinary meaning unless manifest absurdity results, or unless some other meaning is clearly evidenced from the face or overall content of the instrument. *Alexander v. Buckeye Pipe Line Co.*, *supra*, paragraph two of the syllabus (1978).

{¶70} "'[T]he construction of written contracts and instruments of conveyance is a matter of law.'" *Corder*, *supra*, at ¶ 25, quoting *Alexander*, at paragraph one of the syllabus. Accordingly, we conduct a de novo review on appeal.

*Baber v. Mikolayczyk*, 2025-Ohio-2910, ¶ 23 (6th Dist.), citing *Esteph v. Grumm*, 2008-Ohio-1121, ¶ 8 (4th Dist.).

{¶71} In the instant case, contrary to the Pfeifers' claim on appeal, the express terms of the road easement do not limit the appellees' use thereof to ingress and egress only, as the easement specifically provides that the appellees are entitled to "use" the road. Parking on a road, walking on a road, and using a road for recreational purposes, so long as such uses do not impair the travel of other vehicles or persons, are uses that comport with the usual and customary use of residential-area roadways. Accordingly, the trial court's order regarding the scope of the road easement is consistent with the plain language granting that easement.

{¶72} The fifth assignment of error is overruled.

*Sixth Assignment of Error*

{¶73} In the sixth assignment of error, the Pfeifers argue that the trial court erred in determining how costs for maintenance of the road easement should be divided between the parties.

{¶74} In the January 23, 2025, judgment entry issuing declaratory judgment, the trial court ordered as follows with regard to repair and maintenance of the private roads addressed in the road easement:

> The owner of the 903 North Warpole Street Property has a duty to maintain and repair the North, East and South Private Roads along with the owners of the 10125 [*sic*] State Route 199 Property. The repairs and maintenance shall be done after consultation and agreement and consent of the owners of both properties.

> Unless otherwise agreed, the cost of maintenance and repairs shall be divided equally between the owners of the 903 North Warpole Property and the owners of the 10215 State Route 199 Property.

(Docket No. 88).

{¶75} The express easement at issue here, the language of which has been set forth previously in this opinion, does not address the issue of which party bears the responsibility for the cost of maintenance and repair of that easement, or to what extent such costs should be split between the parties.

{¶76} As a general rule, Ohio courts have long held that the dominant estate holder is responsible for the maintenance and repair of an easement unless the servient estate holder has expressly agreed to undertake such responsibilities. *See*, *e.g.*, *Nat'l Exch. Bank v. Cunningham*, 46 Ohio St. 575, 588–89 (1889).

{¶77} However, in the case of a non-exclusive easement such as the one at issue here, courts have recognized the propriety of apportioning maintenance and repair costs equitably based on the parties' joint use of the easement.

{¶78} For instance, in *Market Enterprises, Inc. v. Summerville*, 2002-Ohio-3692 (5th Dist.), the Fifth District Court of Appeals considered whether the holder of a dominant estate should share in the cost of maintaining and repairing a non-exclusive easement. In that case, Market Enterprises deeded to Mr. Summerville certain property that included a parking lot easement. *Id.*, at *1. The deed was silent as to who was responsible for maintaining and repairing the easement, but Market Enterprises soon incurred such expenses and Mr. Summerville refused to pay a share

of the expenses incurred. *Id.* As a result, Market Enterprises filed suit to collect Mr. Summerville's pro rata share. *Id.* On appeal, the Fifth District upheld the trial court's decision to order Mr. Summerville to pay his portion of the expenses. Noting that the deed was silent as to any payment obligation, the court held that, unless the grantor of an easement expressly agrees to be responsible for maintenance and repairs, it is the grantee's obligation to help repair the easement when those repairs are necessary (1) for his own use, or (2) to prevent the easement from becoming an annoyance or nuisance. *Id.*, at *2. Because the parties jointly used the easement property and there was evidence that it had become a nuisance, the court found that it was appropriate for them to share in the repair expenses. *Id.*

{¶79} Similarly, in *Colace v. Wander*, 2006-Ohio-7094 (5th Dist.), the Fifth District upheld a trial court's decision ordering that repair costs for an easement be split between the grantor and grantee. In that case, the deed was silent as to any maintenance or repair obligations, but the parties had shared in some of the repair costs for a number of years and the grantor had not expressly undertaken sole responsibility for them. Because the easement was jointly used by the parties, the Fifth District affirmed the trial court's decision to apportion the maintenance and repair expenses. *Id.* at ¶¶ 61–68.

{¶80} In the case *sub judice*, the Pfeifers assert that the trial court ignored the above-cited case law, and they argue that the cases indicate that the cost of

maintenance and repairs should be divided between the parties in a manner proportionate to their relative use, rather than dividing it evenly.

{¶81} However, contrary to the Pfeifers' argument on appeal, the trial court specifically found that the parties "share an equal need to use the full extent" of the road easement. (Reasoning Supporting Declaratory Judgment Reasoning, Docket No. 89). While the Pfeifers argue that an equal need to use the road easement does not equate to actual equal use, we conclude that implicit in the trial court's finding is a determination that the parties' relative use of the road easement is equal, due to the fact they use the road jointly, which fully supports the trial court's order that the cost of maintenance and repairs be divided equally between the parties.

{¶82} The sixth assignment of error is overruled.

*Seventh Assignment of Error*

{¶83} In the seventh assignment of error, the Pfeifers argue that the trial court erred in failing to dismiss the Weavers as parties to the lawsuit due to lack of standing.

{¶84} With regard to this assignment of error, the record reflects that on March 20, 2023, the Pfeifers filed a motion to dismiss the complaint pursuant to Civ.R. 12(B)(6). In the alternative, the Pfeifers moved to dismiss Mary Jane Weaver and Charles Weaver as parties to the lawsuit due to lack of standing. The Pfeifers argued that the Weavers were not proper parties to the lawsuit because they do not own the property in question and are not parties to the easements at issue,

and that they lacked standing to bring a claim for tortious interference with contract as the Weavers are not parties or intended third-party beneficiaries to the real estate purchase contract upon which the tortious interference claim was based.

{¶85} On July 3, 2023, the trial court filed a judgment entry overruling the motion to dismiss the complaint. In that same judgment entry, with regard to the issue of whether the Weavers had standing, the trial court found that the Weavers had standing to bring the claims asserted in the first five counts of the complaint. The trial court determined that the Weavers lacked standing as to the sixth count of the complaint, alleging tortious interference with contract, and therefore dismissed the claims of the Weavers with regard to that count.

{¶86} "Standing determines whether a litigant is entitled to have a court determine the merits of the issues presented." (Internal quotations and citations omitted.) *Moore v. Middletown*, 2012-Ohio-3897, ¶ 20. "Whether a party has established standing to bring an action before the court is a question of law, which we review de novo." *Id.*, citing *Cuyahoga Cty. Bd. of Commrs. v. State*, 2006-Ohio-6499, ¶ 23.

{¶87} Before a court can consider the merits of a legal claim, "the person or entity seeking relief must establish standing to sue." *Ohio Pyro, Inc. v. Ohio Dept. of Commerce*, 2007-Ohio-5024, ¶ 27. Under common-law standing, a plaintiff must demonstrate: (1) an injury; (2) that is fairly traceable to the defendant's allegedly unlawful conduct; and (3) is likely to be redressed by the requested relief. *Ohioans*

*for Concealed Carry, Inc. v. Columbus,* 2020-Ohio-6724, ¶ 12. "[T]he question of standing depends upon whether the party has alleged such a 'personal stake in the outcome of the controversy,' as to ensure that 'the dispute sought to be adjudicated will be presented in an adversary context and in a form historically viewed as capable of judicial resolution.'" (Citations omitted.) *Sierra Club v. Morton*, 405 U.S. 727, 732 (1972).

**{¶88}** Also relevant here is the Declaratory Judgment Act, R.C. 2721.03, which provides:

> [A]ny person interested under a deed, will, written contract, or other writing constituting a contract or any person whose rights, status, or other legal relations are affected by a constitutional provision, statute, rule as defined in section 119.01 of the Revised Code, municipal ordinance, township resolution, contract, or franchise may have determined any question of construction or validity arising under the instrument, constitutional provision, statute, rule, ordinance, resolution, contract, or franchise and obtain a declaration of rights, status, or other legal relations under it.

**{¶89}** While a declaratory-judgment action generally contemplates that the action is brought before an injury-in-fact has occurred, a plaintiff must nonetheless demonstrate "'actual present harm or a significant possibility of future harm to justify pre-enforcement relief.'" *Martin v. Ohio Univ.*, 2023-Ohio-2511, ¶ 28 (4th Dist.), citing *Peoples Rights Org., Inc. v. Columbus*, 152 F.3d 522, 527 (6th Cir. 1998). "Certain impending injury is sufficient to obtain preventative relief; a plaintiff need not wait for an injury to actually occur." *Id.*

{¶90} Finally, "judges are cautioned to remember, standing is not a technical rule intended to keep aggrieved parties out of court. 'Rather, it is a practical concept designed to insure that courts and parties are not vexed by suits brought to vindicate nonjusticiable interests and that judicial decisions which may affect the rights of others are forged in hot controversy, with each view fairly and vigorously represented.'" *Moore*, *supra*, at ¶ 47, quoting *Fort Trumbull Conservancy, L.L.C. v. Alvest*, 262 Conn. 480, 486 (2003).

{¶91} In the instant case, pursuant to the above authority, the trial court did not err in finding that the Weavers, as the lessees and residents of the real property at issue, had standing to sue for a determination of their rights pursuant to the easements in question. As the full-time residents of 903 North Warpole Street, the Weavers had a personal stake in the outcome of the controversy. Based on the allegations set forth in the complaint, the Weavers – in addition to plaintiff Hoover, the actual owner of that property – had rights at issue in the first four causes of action and were in the position to have been injured by the Pfeifers' conduct, and such injuries or certain impending future injury was likely to be redressed by the relief requested in the complaint. We also find it persuasive that the easement language contained in the deed does not grant use of the easements solely to the easement holder. Finally, the Weavers, as the residents of 903 North Warpole, had rights affected as a result of the easements having been granted in the deed, as required to seek declaratory judgment pursuant to R.C. 2721.03, *supra*.

{¶92} The seventh assignment of error is overruled.

*Eighth Assignment of Error*

{¶93} In the eighth assignment of error, the Pfeifers assert that the trial court erred in determining at the summary judgment stage that they had committed a trespass through installing speed bumps on the road easement. The Pfeifers argue that a question of material fact existed as to whether or not their installation of speed bumps unreasonably interfered with the appellees' use of the road easement so as to constitute a trespass.

{¶94} "Trespass is an unlawful entry upon the property of another." *Chance v. BP Chemicals, Inc.*, 77 Ohio St. 3d 17, 24 (1996). "An easement implies necessarily a fee in another, and hence it is a right by reason of such ownership to use the land for a special purpose, and one not inconsistent with the general property in the land of the owner of the fee." *Rueckel v. Texas Eastern Transmission Corp.*, 3 Ohio App.3d 153, 159-160 (1981). "By the same token, the owner of the land which is subject to an easement has the right to use the land in any manner not inconsistent with the easement, and this is true whether the easement is created by grant or by reservation." *Id*. "Not even the owner of the fee has a right to interfere with the proper enjoyment of the easement or to grant to another rights which infringe upon it. * * * ." (Footnotes omitted.) See, also, *Gibbons v. Ebding* (1904), 70 Ohio St. 298, 71 N.E. 720, and *Pomeroy v. Salt Co.* (1882), 37 Ohio St. 520." *Id*.

Thus, unreasonably overburdening an easement constitutes an act of trespass. *See*

*Hemmelgarn v. Huelskamp & Sons, Inc.*, 2019 Ohio-5298, ¶¶ 39-43 (3d Dist.).

**{¶95}** As to the summary judgment finding at issue here, Civ.R. 56(A)

provides, in relevant part:

> A party seeking to recover upon a claim, counterclaim, or cross-claim or to obtain a declaratory judgment may move with or without supporting affidavits for a summary judgment in the party's favor as to all or any part of the claim, counterclaim, cross-claim, or declaratory judgment action. * * *

Civ.R. 56(C) provides, in relevant part:

> * * * Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. No evidence or stipulation may be considered except as stated in this rule. A summary judgment shall not be rendered unless it appears from the evidence or stipulation, and only from the evidence or stipulation, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence or stipulation construed most strongly in the party's favor. * * *

**{¶96}** "Pursuant to Civ.R. 56(C), summary judgment is appropriate only

under the following circumstances: (1) no genuine issue of material fact remains to

be litigated, (2) the moving party is entitled to judgment as a matter of law, and (3)

viewing the evidence most strongly in favor of the nonmoving party, reasonable

minds can come to but one conclusion, that conclusion being adverse to the

-43-

nonmoving party." *Tharp v. Whirlpool Corp*., 2018-Ohio-1344, ¶ 24 (3d Dist.), citing *Harless v. Willis Day Warehousing Co.*, 54 Ohio St.2d 64, 66 (1978).

**{¶97}** "The party moving for summary judgment has the initial burden of producing some evidence which demonstrates the lack of a genuine issue of material fact." *Ineos USA L.L.C. v. Furmanite America, Inc.*, 2014-Ohio-4996, ¶ 18 (3d Dist.), citing *Dresher v. Burt,* 75 Ohio St.3d 280, 292 (1996). "In doing so, the moving party is not required to produce any affirmative evidence, but must identify those portions of the record which affirmatively support his argument." *Id.* "The nonmoving party must then rebut with specific facts showing the existence of a genuine triable issue; the nonmoving party may not rest on the mere allegations or denials of the pleadings." *Id.*, citing *Dresher* at 293; Civ.R. 56(E).

**{¶98}** "Material facts" are facts "that might affect the outcome of the suit under the governing law." *Turner v. Turner*, 67 Ohio St.3d 337, 340 (1993), citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, (1986). "Whether a genuine issue exists is answered by the following inquiry: Does the evidence present 'a sufficient disagreement to require submission to a jury' or is it 'so one-sided that one party must prevail as a matter of law[?]'" *Id.*, citing *Anderson*, 477 U.S. at 251-252.

**{¶99}** Appellate courts conduct a de novo review of a trial court's decision on a motion for summary judgment. *Hancock Fed. Credit Union v. Coppus*, 2015-Ohio-5312, ¶ 15 (3d Dist.), citing *Esber Beverage Co. v. Labatt USA Operating Co.,*

*L.L.C.,* 2013-Ohio-4544, ¶ 9. Thus, this Court must conduct an independent review of the evidence before the trial court at the summary judgment stage without deference to the trial court's decision. *Tharp v. Whirlpool Corp.*, *supra*, at ¶ 23.

{¶100} With regard to the issue raised here, the uncontested facts reflected by the record at the summary judgment stage are that the Pfeifers waged a clear campaign of attempting to obstruct or limit access to 903 North Warpole Street, which included the installation of multiple speed bumps up and down the length of the private lane upon which the road easement is located. The evidence before the trial court when rendering summary judgment was that Pfeifers purchased pre-fabricated speed bumps and then installed them in the road easement, and that the speed bumps interfered with the appellees' use and enjoyment of the road easement. While the Pfiefers maintain that the speed bumps did not cause any problems with the appellees' use of the road "as long as a normal speed was used", the record is replete with uncontroverted evidence that the speed bumps were a hindrance to driving on the road easement, and that the pre-fabricated speed bumps easily became dislodged and created an impediment to the full enjoyment and use of the private roadway created by the road easement.

{¶101} More importantly, as the trial court noted, the Pfeifers freely admitted that the purpose of the speed bumps was to slow traffic on the private road. As the trial court also accurately found, it is unquestionable that the placement of the speed bumps not only reduced speed but also made the operation of motor vehicles more

difficult on the road. Accordingly, the trial court correctly determined in its summary judgment decision that the Pfeifers actions in placing speed bumps on the road without consent constituted a breach of the easement and an act of trespass.

{¶102} The eighth assignment of error is overruled.

*Ninth Assignment of Error*

{¶103} In the ninth assignment of error, the Pfeifers argue that the trial court erred in overruling three motions filed by them without holding a hearing thereon.

{¶104} With respect to this claim, the record reflects that, while the motions for summary judgment filed by the parties on November 1, 2024, were pending before the trial court, the Pfeifers filed a motion to strike with sanctions on December 26, 2024. In that December 26, 2024 filing, the Pfeifers moved to strike numerous portions of various affidavits filed by the plaintiffs, arguing that the affidavits of the plaintiffs filed in support of their summary judgment position contained false statements and flagrant misrepresentations, and seeking financial sanctions against the plaintiffs and their attorney for their allegedly dishonest actions.

{¶105} Then, on February 5, 2025, after the trial court had on January 16, 2025 filed judgment entries granting summary judgment in part to the plaintiffs and in part to the Pfeifers, had on January 23, 2025 issued a declaratory judgment primarily in favor of the plaintiffs, and had on January 31, 2025 issued a preliminary injunction, the Pfeifers filed another motion to strike with sanctions. In that filing,

the Pfeifers moved to strike the amended affidavits of the plaintiffs, arguing that the affidavits at issue grossly misstated the facts and evidence and did not comply with Civ.R. 56(E), which dictates the requirements for affidavits filed in support of a party's position on summary judgment. The Pfeifers again sought financial sanctions against the plaintiffs and their attorney for their allegedly dishonest actions.

{¶106} Finally, on March 10, 2025, while the trial to the court that began on February 18, 2025, was ongoing, the Pfeifers filed a motion for contempt. In that March 10, 2025 motion, the Pfeifers asserted that a witness subpoenaed for trial, John Steel, should be held in contempt of court for the failure to produce certain cell phone records pursuant to a subpoena duces tecum. In that motion, the Pfeifers represented that Steel had appeared at trial pursuant to his subpoena but had not produced the demanded records, and that contact with Steel had been lost after he was granted an opportunity to obtain the records and appear later in the case.

{¶107} The record further reflects that the trial court did not journalize any rulings on the Pfeifers' December 26th, February 5th, and March 10th motions until March 14, 2025, when the trial court filed a final judgment entry following the conclusion of the trial to the court on March 12, 2025. In its March 14, 2025 judgment entry, the trial court granted the plaintiffs' motion to amend the pleadings to conform to the evidence and denied all other pending motions.

**{¶108}** On appeal, the Pfeifers assert in their ninth assignment of error that the trial court prejudicially erred in denying those three motions without holding a hearing or hearings thereon.

**{¶109}** Normally, we review a trial court's decision to deny a motion to strike an affidavit for an abuse of discretion. *Williams v. Schneider*, 2018-Ohio-968, ¶ 108 (8th Dist.), citing *State ex rel. O'Brien v. Messina*, 2010-Ohio-4741, ¶ 21 (10th Dist.). In cases involving requests for sanctions, "[t]he legal standard of review depends on whether a court is reviewing legal or factual decisions." *Horenstein, Nicholson & Blumenthal, L.P.A. v. Hilgeman*, 2021-Ohio-3049, ¶ 168 (2d Dist.), citing *Namenyi v. Tomasello*, 2014-Ohio-4509, ¶¶ 19-20 (2d Dist.). "'[W]hether a pleading is warranted under existing law or can be supported by a good-faith argument for an extension, modification, or reversal of existing law is a question of law, which is reviewed de novo.'" *Swartz v. Hendrix*, 2011-Ohio-3422, ¶ 22 (2d Dist.), quoting *Foland v. Englewood*, 2010-Ohio-1905, ¶ 32 (2d Dist.).

**{¶110}** Contempt of court is defined generally as disobedience of a court order. *Windham Bank v. Tomaszczyk*, 27 Ohio St. 2d 55, paragraph one of the syllabus (1971). Civ.R. 45(E) specifically provides that "[f]ailure by any person without adequate excuse to obey a subpoena served upon that person may be deemed a contempt of the court from which the subpoena issued." We review a trial court's contempt sanction under an abuse-of-discretion standard. *Heekin v. Silver Rule Masonry*, 2011-Ohio-2775, ¶ 10 (1st Dist.).

{¶111} However, in the instant case, the Pfeifers do not argue that the trial court erred in denying the motions at issue but, rather, just that a hearing was required to be held before doing so.

{¶112} In analyzing this claim, we note that the Pfeifers do not present this Court with any legal authority supporting their contention that a hearing was required on the two motions to strike. App.R. 12(A)(2) provides that an appellate court "may disregard an assignment of error presented for review if the party raising it fails to identify in the record the error on which the assignment of error is based or fails to argue the assignment separately in the brief, as required under App.R. 16(A)." App.R. 16(A)(7) requires that an appellant's brief include "[a]n argument containing the contentions of the appellant with respect to each assignment of error presented for review and the reasons in support of the contentions, with citations to the authorities, statutes, and parts of the record on which appellant relies."

{¶113} As to the contempt motion relating to a witness's alleged non-compliance with a trial subpoena, the Pfeifers do not articulate – much less establish – how they were actually prejudiced by the denial of their contempt motion without a hearing. Additionally, the Pfeifers have failed to file a transcript in this appeal of the trial proceedings held on multiple dates between February 18, 2025 and March 12, 2025, as previously noted in the third assignment of error. Without a transcript of those proceedings, we must presume the validity thereof in the absence of

evidence to the contrary. *Black v. St. Marys Police Dep't*, 2011-Ohio-6697, ¶¶ 11-13 (3d Dist.), citing *Knapp v. Edwards Laboratories*, 61 Ohio St.2d 197, 199 (1980).

**{¶114}** The ninth assignment of error is overruled.

*Conclusion*

**{¶115}** Having found no error prejudicial to the defendants-appellants, Dennis and Agnes Pfeifer, in the particulars assigned and argued, the judgments entered in the Wyandot County Court of Common Pleas are affirmed.

***Judgments affirmed***

**MILLER and WILLAMOWSKI, J.J., concur.**

Case No. 16-25-06

# **<u>JUDGMENT ENTRY</u>**

For the reasons stated in the opinion of this Court, the assignments of error are overruled and it is the judgment and order of this Court that the judgments of the trial court are affirmed with costs assessed to Appellant for which judgment is hereby rendered. The cause is hereby remanded to the trial court for execution of the judgment for costs.

It is further ordered that the Clerk of this Court certify a copy of this Court's judgment entry and opinion to the trial court as the mandate prescribed by App.R. 27; and serve a copy of this Court's judgment entry and opinion on each party to the proceedings and note the date of service in the docket. See App.R. 30.

 

Juergen A. Waldick, Judge

 

Mark C. Miller, Judge

 

John R. Willamowski, Judge

DATED:
/jlm